CLAYTON et al. v. ANCELL et al.

No. 5385.

Court of Civil Appeals of Texas. Amarillo.

Feb. 2, 1942.

Rehearing Denied March 16, 1942.

widow, Mrs. Myrtle Richardson and husband, W. C. Richardson, Mrs. Ethel Marie Barnes and husband, J. B. Barnes, hereinafter called the Ancells, complaining of the defendants, Hattie G. Clayton, a widow, Irene Clayton Uthoff and husband, H. C. Uthoff, and R. L. Clayton, Jr., hereinafter called the Claytons, C. L. Apple, W. H. Rogers, J. A. Chase, J. O. Ammons and E. C. Jordan, hereinafter called Apple et al., and the Consolidated Oil Company, a corporation.

The Ancells sought to recover the northwest quarter of Section 3 in Block 7, H. & T. C. Ry. Co.. Survey of land in Wilbarger County, hereinafter called property, from the Claytons and Apple et al. in an action of trespass to try title.

In addition the Ancells alleged that on May 8, 1918 George B. Ancell, Sr., deeded to R. L. Clayton an undivided one-eighth interest in the oil, gas and other minerals on the property; that prior to August 14, 1923 George B. Ancell, Sr., made an agreement with W. H. Peaden to purchase the property from R. L. Clayton for the use and benefit of the Senior Ancell who agreed to reimburse Peaden for the consideration he was required to pay for the property; that in compliance with this agreement Peaden bought the property from Clayton and received a deed therefor and held the title thereto in trust for George B. Ancell, Sr.; that thereafter the legatees and devisees of the Senior Ancell, who died on March 17, 1933, paid to W. H. Peaden $240, obtained a deed from him and thereby acquired title to the property. They also alleged that the Claytons had obtained a quitclaim deed from W. H. Peaden on false and fraudulent representations which was void and asked the cancellation thereof.

The Claytons answered by general demurrer, general denial and a plea of not guilty. In addition they asserted title and sought judgment for title and possession to the royalty by way of a cross-action. They also pleaded that Apple et al. had obtained from them by false and fraudulent representations a power of attorney which they prayed to have cancelled.

The Consolidated Oil Company filed a disclaimer on which it was discharged. Apple et al. filed an answer and a cross-action but failed to perfect an appeal from the judgment, hence, it is unnecessary to set out the pleadings or facts pertaining to the claim of Apple et al.

Royston & Rayzor, Robert Eikel, Jr., Stewart & De Lange, and Albert J. De Lange, all of Houston, for appellants.

R. B. Anderson and M. G. Poteet, both of Vernon, and Heyser & Hicks, Otis E. Nelson, and Rush H. Record, all of Wichita Falls, for appellees.

JACKSON, Chief Justice.

This suit was instituted by the plaintiffs, George B. Ancell, Jr., Mrs. Lute Ancell, a

At the close of the testimony the court peremptorily instructed the jury to return a verdict in favor of the Ancells and on the verdict so returned he rendered judgment that the Ancells have and recover the title and possession to the property with their writ of restitution together with their costs except that incurred by reason of the Consolidated Oil Company having been made a party.

The Claytons are the only defendants who perfected an appeal to this court.

They challenge the action of the court in directing a verdict against them and rendering the judgment thereon inasmuch as the record discloses that the legal title to the one-eighth royalty interest was vested in them and the evidence was insufficient to show as a matter of law that W. H. Peaden held the title of the property in trust for George B. Ancell, Sr., or that the Claytons had obtained their deed by false and fraudulent representations.

The record shows that George B. Ancell, Sr., who died March 17, 1933, is the common source of title. He left a will that was duly probated in which he devised and bequeathed all of his property to his wife, Lute Ancell, or Mrs. George B. Ancell, his two daughters, Myrtle, who married W. C. Richardson, and Ethel Marie, who married J. B. Barnes, and his son, George B. Ancell, Jr.

Mrs. Hattie G. Clayton is the surviving wife of Dr. R. L. Clayton, who died December 1, 1933, and the others called Claytons are their children. He left a will that was duly probated and bequeathed and devised all of his property to his surviving wife, Hattie G. Clayton.

George B. Ancell, Sr., on May 8, 1918 conveyed to Dr. R. L. Clayton a one-eighth undivided interest in the oil, gas and minerals in and under the property and expressed his intention thus: "It being my intention to convey unto the said R. L. Clayton, all of my rights, title and interest in and to the above described premises, viz: a one-eighth (1/8th) royalty, including rentals and bonuses that may be paid on above described land, except rentals and bonuses on lease now in force."

On August 14, 1923 Dr. R. L. Clayton sold and conveyed to W. H. Peaden for the recited consideration of $1 his royalty interest in the property. On this instrument written in pencil following the acknowledgment of Dr. Clayton is this nota-

tion: "May 26-25 This it to certify that lease contract is hereby cancelled and of no further force and effect. (Signed) W. H. Peaden Witness: J. C. Eatherly."

This deed was filed and recorded in the office of the county clerk of Wilbarger County on August 8, 1939.

On August 9, 1939 W. H. Peaden by quitclaim deed bargained and sold the royalty interest in the property to Hattie G. Clayton and this quitclaim deed was duly filed in the deed records of Wilbarger County on August 14, 1939.

On September 15, 1939 W. H. Peaden by an instrument in writing, after giving the date of the sale from George B. Ancell, Sr., to R. L. Clayton of a one-eighth royalty interest in the property, the record of the instrument, that on August 14, 1923 Clayton conveyed the royalty interest to W. H. Peaden and on May 26, 1925 he sold for a valuable consideration the same mineral interest by the note penciled on the Clayton deed to George B. Ancell, Sr., and delivered the original assignment from Clayton, he states some question has arisen about the sufficiency of the penciled assignment and recites for and in consideration of $1 he ratifies the former assignment in pencil and sells, transfers and conveys such royalty interest to the Ancells.

On March 1, 1941 W. H. Peaden assigned to the Ancells all claims and causes of action had by him against the Claytons which "were connected with and arose out of my having an interest in the land", which we have designated the property; authorized suit to be brought by the Ancells to recover the land or damages but provided that he should be held harmless from any claims for court costs, expenses, etc.

W. H. Peaden testified that he knew Dr. R. L. Clayton and Mr. George B. Ancell, Sr., in 1918, was interested with Dr. Clayton in a well the doctor was drilling on the witness' land in Wichita County, Texas; that Mr. Ancell before the witness met him conveyed to Dr. Clayton the oil, gas and mineral rights in the property; that the well was completed but was not a producer; that some time thereafter he was requested by the Senior Ancell to secure the interest held by Dr. Clayton in the property on the understanding that the Senior Ancell would repay him whatever he was out in purchasing the property. The language of the witness pertinent to his taking title to the land from Dr. Clayton in trust for the Senior Ancell varies but is concisely

stated by the witness in this language: "George B. Ancell came to me and asked me to secure it for him upon the understanding that he would pay me, reimburse me, whatever amount I was out if it was within reason." He says he and Dr. Clayton had had some business together for several years and when they settled in August, 1923 the doctor was indebted to him for $1,000 and the deed from Dr. Clayton to him to the royalty was made in order to pay such indebtedness; that he met George B. Ancell, Sr., a few times after he got the deed but didn't have it with him until on May 26, 1925 when they met in the road. Ancell asked about the property and he delivered the instrument from Clayton and wrote thereon the penciled note above quoted, received a check for $25 and was informed that if the transfer was sufficient he would receive $240 in addition. If not sufficient a new instrument would be drawn for the signature of Mr. Peaden and when signed he would receive the $240; that he purchased the royalty for the Senior Ancell, whom he never saw after May 26, 1925. He never wrote him a letter, never communicated with him in any way, never requested him to pay the $240, but on September 15, 1939 he was visited by George B. Ancell, Jr., and signed the instrument of that date by which he ratified the former penciled note and transferred the royalty interest he acquired from Dr. Clayton to the Ancells for which they voluntarily paid him $240; that previous to that date he had made a quitclaim deed to the Claytons for the same property at the request of Mr. Rayzor. He testified that he had been engaged in the land and oil and gas business from 1915, trading in land and leases, working for oil companies, and knew that the title to land was transferred or conveyed by deed.

 It will be noted that the penciled notation on the bottom of the instrument from Clayton to Peaden does not say the within instrument is cancelled. This instrument is not a lease since it has no provision for rentals or termination. It was a royalty deed that conveyed to Peaden without limitation the title to an undivided one-eighth interest in the oil, gas and minerals on the property. Peaden did not testify that he agreed to obtain the property for the Senior Ancell nor to sell it to him for the amount he paid therefor. No price was agreed upon and while Peaden suggested it might be obtained for $1 or $1.50 per acre there was no suggestion that either price would be reasonable. The property was not purchased until August 14, 1923. The deed and the purported cancellation of some lease was not delivered until May 26, 1925. This purported cancellation and the delivery of the deed on which it was written did not pass title. Peaden says that at the time of this delivery he was given a check for $25 and was to be paid $240 thereafter. He made no effort to collect this $240 at any time but more than fourteen years later he was visited by George B. Ancell, Jr., the son of George B. Ancell, Sr., and accepted from him $240 and gave a deed conveying the royalty on the property to the Ancells. In this instrument he gives a brief history of the transaction, mentions the conveyance by the Senior Ancell to Dr. R. L. Clayton May 8, 1918, the deed by the doctor to Peaden on August 14, 1923, the attempted cancellation by the penciled note of some unidentified lease contract on May 26, 1925, however, he does not claim in such instrument any agreement to purchase the property for the Senior Ancell from Dr. Clayton or that he held the title he acquired in trust, nor any facts that would suggest the existence of such trust relationship. The Senior Ancell lived until March 17, 1933, nearly eight years from the time he received the instrument with the penciled notation thereon. He never made an effort to acquire any additional evidence of title. He never paid nor offered to pay the $240. The instrument was not placed on record during his life. Mrs. Lute Ancell, the wife of George B. Ancell, Sr., testified that she found this instrument among her papers some years after he died and she and her son, George B. Ancell, Jr., carried the deed to Vernon and had it recorded. She failed to testify when she found the deed but the penciled notation and authentication of the signature on the acknowledgment thereto was not filed for record in Wilbarger County until August 12, 1939. She was an interested witness and the oil and gas and minerals on the property were worthless from 1933 to 1939 when it became very valuable.

█ On January 18, 1938 the Ancells executed leases to the oil and gas on the North Half and the South Half of Section 3, Block 7, H. & T. C. Ry. Co. land in Wilbarger County, but expressly excluded from their lease contracts the "interest of Dr. R. L. Clayton in the Northwest Quarter of said section" thereby recogniz-

ing such interest outstanding in the Claytons. The Claytons by bill of exception urge as error the action of the court in excluding the leases above referred to but the record shows the court permitted the reading of these instruments to the jury.

■ It is settled in Texas that the presumption of law is that a deed conveys the property therein described to the grantee named in the deed and that he is the owner thereof. To overcome this presumption and engraft a parol trust on a deed the party asserting such trust has the burden of showing the parol trust by clear, satisfactory and convincing proof thereof. Jones et al. v. Siler et al., 129 Tex. 18, 100 S.W.2d 352, 355, and authorities cited.

In King v. Gilleland, 60 Tex. 271, the Supreme Court says:

"Perhaps there is no fact which, in the trial of civil causes, is required to be so satisfactorily proved as that which engrafts a parol trust upon the legal title. 1 Perry on Trusts, sec. 136, and authorities just cited.

"Whilst it is not necessary that it should be established beyond a reasonable doubt, nothing must be left to conjecture, nor must presumptions be indulged which are not the usual and almost necessary deductions from the facts proved."

■ Parol testimony may be contradicted by circumstances and, in our opinion, the evidence of W. H. Peaden relative to the agreement between him and the Senior Ancell is so indefinite and uncertain and at such variance with the recitations in the other instruments made by him to the Ancells, the failure of the Senior Ancell to get any further evidence of title or to pay Peaden the $240, the failure of Peaden to try to collect such sum, the insufficiency of the penciled note on the deed delivered to transfer title, its failure to refer to the instrument upon which it was written, the execution by Peaden of the quitclaim deed to Mrs. Clayton, and numerous other circumstances in the record, present an issue of fact on the question of an express trust. The Ancells neither pleaded nor offered proof of any character of trust except the agreement upon which they relied.

■ It is the exclusive province of the jury to pass upon the credibility of the witnesses and the weight to be given their testimony and, in our opinion, the record is not so conclusive as to warrant the court as a matter of law to direct a verdict in behalf of the Ancells on an expressed trust.

In Jackson v. Langford, 60 S.W.2d 265, 267, this court held: "It was reversible error for the court to direct a verdict: 'If, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.' Gross v. Shell Pipe Line Corp., Tex.Civ.App., 48 S.W.2d 377, 378, and authorities cited. To the same effect is Jones et al. v. Jones, Tex.Civ.App., 41 S.W.2d 496, and authorities cited."

See, also, Texas Employers' Ins. Ass'n v. Humphrey, Tex.Civ.App., 140 S.W.2d 313.

It is unnecessary, in our opinion, to set out the testimony of W. H. Peaden by which the Ancells endeavored to prove that Mr. Rayzor as the agent of Mrs. Clayton by fraudulent and false representations induced Mr. Peaden to sign the quitclaim deed to the Claytons. Mr. Peaden read the deed before he executed it. He makes no claim that it has been changed or that he had been misled as to what it contained but admits that Mr. Rayzor did not swindle him. Mr. Rayzor in his testimony contradicts all the insinuations of fraud that might be gleaned from the testimony of Mr. Peaden and if the issue of fraud was raised it was a controverted issue to be determined by the jury.

The contention of the Claytons that they were entitled to a directed verdict in their behalf is overruled since we think the testimony did present an issue of a parol trust and probably of fraud.

The judgment is reversed and the cause remanded.