HATTIE G. CLAYTON ET AL V. GEORGE B. ANCELL, JR., ET AL.

No. 7996. Decided January 27, 1943.
Rehearing overruled February 24, 1943.
(168 S. W. 2d Series, 230.)

442

*Royston & Rayzor, Stewart & DeLange* and *Albert J. De-Lange,* all of Houston, for petitioners.

On the proposition that the Court of Civil Appeals should have rendered judgment for petitioner, Hattie G. Clayton, holder of the record title to property in controversy. Allen v. Allen, 101 Texas 362, 105 S. W. 53; Parker v. Coop, 60 Texas 111; Tennant v. Dunn, 130 Texas 285, 110 S. W. (2d) 53.

*R. B. Anderson,* of Vernon, *Heyser & Hicks* and *Otis E. Nelson,* all of Wichita Falls, for respondents.

The judgment of the Court of Civil Appeals was correct, in that there was evidence showing that the mineral title was held by a third party, as trustee for George B. Ancell, Sr., Hassell v. Wise County Coal Co., 47 S. W. 1017; Russell v. Republic Prod. Co. 112 Fed. (2d) 663; Yeager v. Neil, 64 S. W. 701.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

The parties to this suit are in three groups. One group, the Ancells, plaintiffs in the trial court, consists of the widow, son and daughters of George B. Ancell, Sr., deceased, the daughters being joined by their husbands. Another group, the Claytons, defendants in the trial court, consists of the widow, son and daughter of Dr. R. L. Clayton, deceased, the daughter being joined by her husband. The remaining defendants, referred to in the briefs as Appel et al, who claim under a certain power of attorney under the Claytons, compose the third group. No questions are presented for decision with reference to the action by the Claytons against Appel et al to cancel such power of attorney and, for the purpose of this opinion, the case may be regarded as one wherein the Ancells were plaintiffs and the Claytons defendants.

The Ancells sued the Claytons for title and possession of 160 acres of land in Wilbarger County, the property in controversy being the mineral rights in and to such land. Their petition was in several counts, the first of which was an action

in statutory trespass to try title. Other counts will be noticed more specifically hereinafter. At the close of all of the testimony, the district court instructed a verdict in favor of the Ancells and, upon such instructed verdict, rendered judgment against all other parties. The Claytons filed a motion for instructed verdict, but same was overruled. From the judgment of the trial court in favor of the Ancells the Claytons appealed. Appel et al did not appeal. The Court of Civil Appeals reversed the judgment of the trial court and remanded the case thereto. 159 S. W. (2d) 962. The Ancells accepted the judgment and filed no application for writ of error. The case is before us upon the application of the Claytons, their contention being that the Court of Civil Appeals, having reversed the judgment of the trial court, should have rendered judgment in their favor instead of remanding the case to the trial court.

One of the theories upon which the Ancells sought to recover in the trial court was that of an express parol trust. In substance, they alleged that on May 8, 1918, George B. Ancell, Sr., deeded to Dr. R. L. Clayton, an interest in the minerals on and under the property; that thereafter George B. Ancell, Sr., made an agreement with W. H. Peaden to the effect that Peaden would purchase the mineral interest from Dr. Clayton for the use and benefit of him, Ancell, Sr., who agreed to reimburse Peaden for the consideration which he might be required to pay for the property; that in compliance with such agreement Peaden bought the property from Dr. Clayton and received a deed therefor, holding the title thereto in trust for Ancell, Sr.; and that the title claimed by the Claytons was acquired through a quitclaim deed executed to them by Peaden while he was holding the property as trustee only.

■ It would appear that the trial court concluded that the Ancells established their trust theory as a matter of law, and, upon that ground, instructed a verdict in their favor. The Court of Civil Appeals concluded that the trust theory was not established as a matter of law, but that the evidence raised an issue of fact with respect thereto. We are unable to agree with either conclusion, but are of the opinion that the Ancells wholly failed to establish their trust theory or raise an issue of fact with respect thereto.

George B. Ancell, Sr., is the common source of title. On May 8, 1918, he executed and delivered to Dr. R. L. Clayton a mineral deed to the following:

"All of my right, title, and interest in and to the oil, gas and mineral rights, in and under the following described premises, situated in the County of Wilbarger, Texas, to-wit:

"Being the Northwest quarter of Section 3, H. & T. C. R. R. Company Survey, Block 7, containing 160 acres and being located in Wilbarger County, Texas.

"It being my intention to convey unto the said R. L. Clayton, all of my rights, title and interest in and to the above described premises, viz: A one-eighth (1/8) royalty, including rentals and bonuses that may be paid on above described land, except rentals and bonuses on lease now in force."

█ At this point we break our statement of the case to consider a question presented in the application, viz: What estate was conveyed by the above instrument? The language of the grant next preceding the description of the land clearly indicates that the intention of the grantor was to convey all of his mineral estate in the land. It appears equally certain that, by the use of the language immediately following the description, the grantor did not undertake to limit the estate granted above further than to provide that rentals and bonuses which might thereafter accrue under a mineral lease then in force should be paid to him. Assuming that the lease then outstanding is no longer in force, it is our view that the entire mineral estate in the land is vested in the successors in title to Dr. Clayton, whoever they may hereafter be decreed to be. While not directly in point on the facts, we cite the case of Bruni v. Vidaurri, 140 Texas 138, point 14, 166 S. W. (2d) 81, points 25-27, for a discussion of the governing principles of construction.

Resuming our statement of the case, it appears that Dr. Clayton promoted the drilling of a test well on a block of land in the vicinity of the Ancell ranch, and that the consideration for the mineral deed from Ancell, Sr., to him was the drilling of such test well. The well was drilled on lands belonging to Peaden, but was not a producer. After it was drilled Ancell, Sr., requested Peaden to secure the interest which he had conveyed to Dr. Clayton, above described, and it is upon the alleged express agreement between them with reference thereto that the Ancells base their parol trust theory. After that oral agreement was made, which agreement will be considered hereinafter, Peaden procured a deed from Dr. Clayton to all of the

interest theretofore conveyed to him by Ancell, Sr. Such deed was dated August 14, 1923. Peaden testified that on May 26, 1925, he delivered to Ancell, Sr., the deed which Dr. Clayton had made to him and at that time he wrote in pencil upon such deed following the acknowledgment this memorandum:

"May-26-25

"This is to certify that lease contract is hereby canceled and of no further force and effect.

(Signed) W. H. Peaden

Witness: J. C. Eatherly."

We here again break our statement of the case to note that we agree with the holding of the Court of Civil Appeals that this memorandum and the delivery of the deed upon which it was written did not pass title from Peaden to Ancell, Sr.

Resuming our statement, Ancell, Sr., then paid Peaden $25.00 in cash and it was agreed that, if it was found that the transfer was sufficient to vest the title in Ancell, Sr., he would pay Peaden $240.00 additional, but if it was found that the transfer was not sufficient, then a new instrument would be drawn for the signature of Peaden and when he signed same he would be paid $240.00. Peaden never saw Ancell, Sr., after that date and never requested him to pay the $240.00. On September 15, 1939, more than fourteen years after Peaden delivered the instrument to Ancell, Sr., and six years after the latter's death, Peaden was visited in Oklahoma City by George C. Ancell, Jr., one of the respondents herein, who paid him $240.00 and procured from him a quitclaim deed to the interest acquired by him from Dr. Clayton. That instrument ratified and confirmed the pencil notation above set out. Prior to that time, however, and on August 9, 1939, Peaden had executed a quitclaim deed to his interest in this property to Hattie G. Clayton, widow of Dr. Clayton, and one of the petitioners, and the title of the Claytons rests upon that quitclaim. One day before it was procured from Peaden, the Ancells filed for record in the office of the county clerk of Wilbarger County the deed from Dr. Clayton to Peaden which they had discovered among the papers of Ancell, Sr. .

The witness, Peaden, was interrogated at length, both on direct and cross-examination, as to the terms of the parol agreement between him and the Senior Ancell. After carefully considering all of such testimony, we are of the view that an

accurate statement of the substance thereof is to be found in the opinion of the Court of Civil Appeals, from which we quote as follows:

"The language of the witness pertinent to his taking title to the land from Dr. Clayton in trust for the Senior Ancell varies but is concisely stated by the witness in this language: 'George B. Ancell came to me and asked me to secure it for him upon the understanding that he would pay me, reimburse me, whatever amount I was out *if it was within reason.*' He said he and Dr. Clayton had had some business together for several years and when they settled in August, 1923, the doctor was indebted to him for $1000 and the deed from Dr. Clayton to him to the royalty was made in order to pay such indebtedness; * * *." (Italics ours.)

■ It is our conclusion that this evidence is wholly insufficient to engraft a parol trust upon the property in favor of the Senior Ancell. There is no suggestion by the record of any evidence that would raise the issue that a resulting trust or a constructive trust arose from the transaction. For a recovery upon the trust theory the Ancells must rely upon the express contract between Ancell, Sr., and Peaden.

The Court of Civil Appeals correctly states:

"It is settled in Texas that the presumption of law is that a deed conveys the property therein described to the grantee named in the deed and that he is the owner thereof. To overcome this presumption and engraft a parol trust on a deed the party asserting such trust has the burden of showing the parol trust by clear, satisfactory and convincing proof thereof. Jones et al v. Siler, et al, 129 Texas 18, 100 S. W. (2d) 352, 355, and authorities cited."

■ Under our view not only was the evidence not clear, satisfactory and convincing but there is no evidence at all of the presence in the agreement of certain elements requisite to the creation of a parol trust. The weakness is not so much in the clarity of the evidence as it is in its quality. A parol trust must be based upon a binding agreement made in advance of the acquisition of title. Ancell, Sr., did not obligate himself to reimburse Peaden the amount he might pay Dr. Clayton. The agreement to do so "if it was within reason" is not a binding obligation and will not therefore support a parol trust. The

facts disclose that Dr. Clayton conveyed this property to Peaden in settlement of an indebtedness of $1000, and thereafter Peaden agreed to sell same to Ancell, Sr., for $265.00. The original agreement between them constituted at most but a verbal agreement to sell real estate and is therefore condemned both by the statute of conveyances, Art. 1288, and the statute of frauds, Art. 3995, sec. 4 Allen v. Allen, 101 Texas 362, 107 S. W. 528; Jones v. Siler, 129 Texas 18, 100 S. W. (2d) 352; Lobban v. Wierhauser, 141 S. W. (2d) 384, (error refused).

■ Another theory upon which the Ancells sought recovery was that the Claytons had procured the conveyance from Peaden through the fraud of their agent. As noted above, the title of the Claytons rests solely upon a quitclaim deed from Peaden to Mrs. Clayton executed August 9, 1939. The Ancells hold under a quitclaim from Peaden of later date in which there was expressly assigned to them all claims and causes of action of every kind and character which Peaden had against the Claytons and Appel et al, connected with the land in controversy. The assignment expressly authorizes the Ancells or any of them to bring suit on such cause of action in their own names or in Peaden's name to recover title to, or possession of such property. As assignees of Peaden's cause of action the Ancells seek to have the quitclaim from Peaden to the Claytons cancelled for fraud.

The Court of Civil Appeals reversed the judgment of the trial court principally upon the ground that an issue of fact was raised on the trust theory. In view of the remand, that court did not definitely decide the question of whether an issue of fact was raised on the fraud theory but concluded with the statement that "we think that the testimony did present an issue of parol trust and probably of fraud." It is our view that the testimony clearly presented an issue of fraud.

A representative of Mrs. Clayton went to Oklahoma City, the home of Peaden, to procure his signature to the quitclaim deed and met him in a hotel there. While in answer to a question on cross examination Peaden testified that such representative did not swindle him, because he was careful to state that he did not know anything about the matter, but only quoted what others had said about it, still, when that testimony is considered in connection with his testimony as a whole, it clearly appears not to be conclusive of the question. Without under-

taking to give a summary of all of his testimony, we refer to the following salient facts: Mrs. Clayton had no title whatever to this mineral estate at the time her representative visited Peaden. Peaden had had many transactions with Dr. Clayton, deceased, whom he had regarded as one of his best friends. The representative told Peaden that there was a missing link in Mrs. Clayton's chain of title; that an instrument had been lost. Peaden did not know at that time that the Ancell land was covered by the deed. He believed and relied on the statements made to him to the effect that the purpose of the instrumnt was to supply a missing link in Mrs. Clayton's chain of title, and would not have executed such quitclaim deed but for such representations. The representative testified that at the time Peaden signed the deed he gave him $5.00, but that Peaden would not accept it; that he stated that he was not going to charge "that widow" anything; that he wanted to help her all he could. To our minds that evidence clearly raised a fact issue of fraud in the procurement of the quitclaim. In view of the fact that the case is to be re-tried we shall not further discuss the evidence.

The result of the conclusion just announced is to affirm the judgment of the Court of Civil Appeals, which remands the cause for another trial. The trial court is instructed however, that, if the testimony on the parol trust theory is substantially the same upon another trial as it was on the former one, no issues be submitted to the jury with respect thereto, but only issues on the theory of fraud in the procurement of the quitclaim deed from Peaden to Mrs. Clayton.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court January 27, 1943.

Rehearing overruled February 24, 1943.