## MURPHY v. CARTWRIGHT.

### No. 13833.

United States Court of Appeals
Fifth Circuit.

Feb. 6, 1953.

Claude V. Thompson, Ada, Okl., Robert L. Holliday and Harold L. Sims, El Paso, Tex., C. L. McArthur, Ada, Okl., for appellant.

J. B. Dudley, Oklahoma City, Okl., C. E. Patterson, Alpine, Tex., John B. Dudley, Jr., Oklahoma City, Okl., Dudley, Duvall & Dudley, Okahoma City, Okl., of counsel, for appellee.

Before HOLMES, RUSSELL, and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

In her complaint, appellant, Mrs. Murphy, alleged that under the terms of the will of her uncle, Thomas J. Cartwright, appellee's father, she was devised an undivided one-ninth remainder interest in certain property, subject only to appellee's life estate therein. She further alleged that by false representations, his acts and conduct, appellee induced her to execute to him without consideration therefor a quit claim deed covering her interest in the property. She sought judgment against appellee, cancelling the quit claim deed and granting such other relief to which she may be entitled. Appellee denied that he induced appellant to execute the quit claim deed in the manner described in her complaint, but asserted that she voluntarily and for valuable consideration executed and delivered the deed to him. He also denied that appellant was vested with any interest in his father's estate by virtue of the will and codicil thereto under which she claimed, and prayed that he have judgment so decreeing. In addition, he claimed that although record title to the property covered by the quit claim deed rested in Thomas J. Cartwright at the time of his death, in truth, appellee owned a one-half undivided interest in such property.

The Court found that the will, together with the codicil, was valid and conveyed to appellee only a life estate in the property in question. As to certain property, re-

ferred to as the "Knox County lands",[1] the Court found that at the time of his death Thomas J. Cartwright was the sole owner in fee simple, but as to all other property owned by, or in the name of, Thomas J. Cartwright, appellee owned an undivided one-half interest. However, upon a finding that the quit claim deed was not procured by fraud, false representations, or fraudulent concealment, the Court determined it was valid and binding upon appellant. Accordingly, judgment was entered denying appellant the relief prayed for. Appellant urges that this judgment must be reversed, because the findings that the quit claim deed was not obtained by fraud and that appellee owned an undivided one-half interest in certain of the property are unsupported by the evidence and clearly erroneous.

There is little dispute in the facts of the case. For many years prior to his death on January 24, 1949, Thomas J. Cartwright was a resident of Brewster County, Texas, several hundred miles from Ada, Oklahoma, where appellant, a daughter of Cartwright's sister, resided. Years ago, upon the death of Thomas J. Cartwright's first wife, appellant's mother had "come to live" with her brother for some time. Appellee was then a small boy in the home. Although appellant had not seen her uncle for a number of years, they corresponded with each other with some regularity. Appellee qualified and was appointed executor of his father's estate on March 1, 1949. On March 9, 1950, he wrote a letter to appellant in which he mentioned her letters to his father and stated that he had always read them. After inquiring of her health and welfare and reporting generally on his condition and the weather, appellee asked her to send him the names and adresses of several relatives, stating that he needed them in connection with a legal matter. No reference was made in this letter to his father's estate or her interest therein. Alice Bristow, a mutual cousin residing in Comanche, Oklahoma, at the request of appellee, wrote a very cordial letter to appellant on March 12, 1950, requesting that she furnish her with names of certain relatives so that she could send them to appellee. On April 2, 1950, appellee wrote another letter to appellant in which he generally discussed family relations and events, and expressed regret that he had not kept in closer contact with the various members of the family. In closing he stated that "maybe one of these times we can get together and visit for awhile." He again made no mention of his father's testamentary provisions. This letter was written shortly before appellee filed an amended inventory in which he claimed to be the owner of one-half of the realty which he had originally inventoried as the property of the estate.

In the middle of the afternoon of May 1, 1950, appellee, Alice Bristow, and Ninnie McKinney, another mutual cousin, without any prior notice, called on appellant at her home in Ada. Appellee's wife and his attorney, Patterson, who had accompanied the visitors, remained in the automobile. During the course of the visit, appellee's wife was called into the house to meet appellant. When the visitors were met at the door by appellant, they were warmly greeted. Appellant was told by one of the cousins, "this is Perry". They were invited into the house where they conversed generally for a few minutes. Following this conversation, appellee told appellant that his father had left a will, leaving to him all of his property during appellee's life, and, after his death, Louis Cartwright, a nephew, was "to take charge of what was left", and divide it into nine parts, one portion of which was to be distributed to appellant. He said that he thought he could handle the property as he wanted to, but when he attempted to sell some lots in Alpine, Texas, he found that it would be necessary for him to have the will construed, commence a suit to clear the title, or secure quit claim deeds from all of the heirs. He had decided to pursue the latter course, and had secured quit claim deeds from nine or ten of the heirs, and

---

1. Although it was not specifically referred to in the findings of the Court, the parties to this appeal agree that this term includes a certain tract of land located in Baylor County, Texas.

wondered if she would like to sign one. Appellant inquired of the other two cousins as to whether they had signed deeds. Upon being told that they had, she agreed to sign one too, saying, "Well, I don't think it is anything but right that Perry should have the authority to take care of his own property." [2] The quit claim deed was not exhibited to appellant at her home, but it was agreed that she would go down town with the party and sign it in the presence of a notary public.

When they arrived at the office of the notary public, appellant was seated and the quit claim deed was placed on the desk before her. She looked at the instrument, although she did not read it, and asked appellee if it was "just for the *sale* of the lots in Alpine." He replied, "No, it is not only to *sell* the town lots, but to sell any or all of the properties mentioned in this deed." (Emphasis supplied in both quotations.) The instrument was signed and notarized. No consideration was paid. Thereafter, appellant was returned to her home. After declining appellant's invitation to spend the night with her, the party departed. The entire transaction was consummated in less than an hour. At the time these events transpired appellant was 80 years of age.

Appellant testified that after she had signed the deed she noticed that Patterson was putting some papers in his brief case. She asked appellee if Patterson was his attorney and was told that he was. She then felt that there was something that she did not understand about the transaction. Appellee testified that he told appellant that Patterson was a friend of his. Two or three days after these events transpired appellant contacted her attorney. On May 18th, her attorney called on Patterson and requested that the instrument be returned to appellant. This request was refused and this suit was filed on the following day.

There is no dispute in the evidence that appellee did not disclose to appellant the value or extent of the estate. Nor did he disclose to her that as executor of the estate he had originally filed an inventory valuing the estate at $64,978.86, and had, on April 3, 1950, filed an amended inventory, reducing the valuation to $28,402.56 by virtue of his personal claims adverse to the interest of the estate.

For fifteen months after the death of the testator, and despite the two letters the executor wrote, no notice of the existence of the will, or of her interest in the estate was brought to appellant's attention. Her first and only information was that sketchily conveyed by the conversation had under the circumstances above related,—amidst the excitement and emotions naturally aroused in the mind and heart of an elderly lady by the sudden and unexpected visit of kinspeople she had affectionately remembered, but not seen, for many years.

Appellant urges that under these facts it is clear that appellee was guilty of fraud, actual or constructive, in procuring the quit claim deed, and because of this she is entitled to have it cancelled. We agree that under the facts here this contention is correct. As executor of the estate, appellee occupied a position of trust to all parties having an interest in the estate. Because of his confidential and fiducial relationship to appellant he owed her the highest degree of fidelity. Strates v. Dimotsis, 5 Cir., 110 F.2d 374. It was his duty to fully and fairly disclose to her all of the pertinent facts as candidly as possible. The law will not permit him to take advantage of those whom he represents. Thaw v. Thaw, 2 Cir., 27 F.2d 729; Collier v. Collier, 137 Ga. 658, 664, 74 S.E. 275. When a person sustains toward another a position of trust and confidence, his failure to disclose facts that it is his duty to disclose, is as much a fraud as an actual mis-

2. This testimony by appellee was corroborated by the testimony of Alice Bristow and Ninnie McKinney, and differs from the testimony of appellant only in two respects. She testified that she was not told the instrument she signed was a quit claim deed, but was given the impression that it was merely an instrument giving appellee permission to handle the estate. She also testified that after she agreed to sign the instrument appellee told her that she would get her one-ninth interest after his death if there was anything left. The other witnesses denied that such statements were made to her.

representation of the true facts. Eddy **v.** Eddy, 6 Cir., 168 F. 590. In Hand v. Errington, Tex.Com.App., 242 S.W. 722, the Court declined to recognize as binding an agreement between a daughter and her father relating to her share in community property, holding that the father's failure to reveal the true status of the community property amounted in law to concealment, and under these circumstances concealment is fraud. See also, Hickman v. Stone, 69 Tex. 255, 5 S.W. 833.

While the facts of this case indicate that appellee did not exercise good faith in procuring the quit claim deed, it is not necessary for us to so hold, for under the circumstances here, the failure of the fiduciary to make a complete and fair disclosure of all of the material facts relevant to his father's estate constituted fraud as a matter of law and evidences conduct which a court of conscience will not tolerate. It follows that the trial court's finding to the contrary is clearly erroneous and must be set aside.

There remains for consideration appellant's contention that the Court erred in finding that at the time of his death Thomas J. Cartwright and appellee were joint owners of certain real property located in Brewster County, Texas, each owning an undivided one-half interest therein.

It is well settled in Texas that the apparent, or record, owner of property is presumed to be the true owner thereof, and one who asserts that such ownership is burdened with a parol trust has the burden of establishing the trust by clear, satisfactory and convincing proof. Clayton v. Ancell, 140 Tex. 441, 168 S.W.2d 230; Speights v. Deon, Tex.Civ.App., 182 S.W. 2d 1016; Groseclose v. Johnston, Tex.Civ. App., 184 S.W.2d 548. Appellee has not met this burden.

The original inventory of the estate, filed in the County Court, Brewster County, Texas, and sworn to by appellee on March 7, 1949, included all of the property now in question as a part of the estate. On April 3, 1950, appellee filed an amended inventory in which he asserted for the first time that he owned an undivided one-half interest in all the real property owned by his deceased father. At that time he explained that he had just discovered a deposition [3] made by his father which apparently gave him reason to believe that "all properties as listed in said [original] inventory and appraisement should have been the joint property of within Perry V. Cartwright, individually and of the Estate of Thomas J. Cartwright, deceased."

While these documents lend some credence to appellee's claim that he owned an interest in the lands located in Knox and Baylor Counties, this issue has been decided adversely to his claim, and, since no cross-appeal has been filed, no question concerning those lands is presented for consideration by this Court. It is sufficient to say that the documents furnish no basis for a finding that appellee owned any interest in the Brewster County lands prior to his father's death. This is particularly true since none of the Brewster County property now in question had been acquired by Thomas J. Cartwright at the time he made the so-called deposition.

The only evidence relating to appellee's alleged interest in the Brewster County property is his testimony that he and his father "used the proceeds from the rents [from the Knox County property] and the money we had accumulated from stock in Knox County to buy land in Brewster County." He testified that he and his father consulted with each other about what they wanted to buy, and that they made purchases from time to time with money acquired from rents and from the sale of stock. W. M. Mayo, a friend of the Cartwright family, testified that on two occasions he asked the senior Cartwright why he did not convey a portion of "this property" to appellee. On both occasions he was told, in effect, that appellee already owned "half of it."

---

**3.** This "deposition" consisted of interrogatories and cross-interrogatories propounded to Thomas J. Cartwright and his answers thereto, dated September 29, 1914. They were made in connection with a suit for divorce filed against Cartwright by his second wife in the District Court of Grayson County, Texas.

■ These general statements do not meet the test of "clear, satisfactory and convincing" evidence established by the Texas Courts as necessary to overcome the presumption that true title to the property was in the record owner. While the evidence considered as a whole tends to prove that appellee and his father conducted their business under an informal partnership arrangement, it does not follow that all of the property acquired by the individual partners became their community property upon acquisition. Indeed, appellee testified that he considered himself owner of all of the cattle on hand and the record discloses that he and his wife owned several town lots in Alpine, Texas. The record is silent as to what other property was owned in the name of appellee.

The fact that appellee disclaimed any interest in the property when he filed the original inventory of the estate is significant. It is inconceivable that, if appellee owned an interest in the land, he had no knowledge of it until he discovered the so-called deposition. In any event, there is no evidence that when the property was acquired in the name of Thomas J. Cartwright it was the intention of the parties that it would be held subject to appellee's claimed interest therein, or that subsequent to his acquisition of the property, Thomas J. Cartwright took any action or made any statement which could rise to the dignity of a conveyance, actual or constructive. We conclude that appellee did not sustain the burden of proving his asserted interest in the property. The finding of the trial Court to the effect that he did is without substantial support, is clearly erroneous, and must be set aside.

It follows from the above that the judgment of the trial Court is reversed and the cause remanded with direction to that Court to enter judgment decreeing cancellation of the alleged quit claim deed, and denying the claim of the executor, Perry V. Cartwright, to a one-half undivided interest in the property in which record title was, at the time of his death, in Thomas J. Cartwright, the testator.

Reversed and remanded.