No. 2544.

Court of Civil Appeals of Texas. Beaumont.
June 1, 1934.

Rehearing Denied June 13, 1934.

See, also, 72 S.W.(2d) 967.

W. D. Gordon and E. E. Easterling, both of Beaumont, for appellants.

Chas. T. Butler, D. E. O'Fiel, and Orgain, Carroll & Bell, all of Beaumont, E. B. Pickett, Jr., of Liberty, and Shields & Johnson, of Houston, for appellees.

COMBS, Justice.

Appellants were plaintiffs and appellees defendants in the court below, and for convenience we will designate the parties as in the trial court.

Plaintiffs filed this suit in the district court of Liberty county May 20, 1933, in the form of trespass· to try title, claiming title to a one twenty-fourth royalty interest in the oil and other valuable minerals in the west 35 acres of a 43-acre tract of land known as the Ida Barrow tract in the Devore League in Liberty county.

Mrs. Ida Barngrover, née Barrow, inherited the tract of land involved from her father's estate, as her separate property. Mrs. Barngrover died prior to the year 1916 intestate, leaving surviving her her husband, George Barngrover, and three minor children, George A. Barngrover, Mason Barngrover, and Tina Barngrover. The husband, George W. Barngrover, duly qualified as guardian of the estate of the minors in the probate court of Liberty county, and on February 21, 1916, he made application to the court to make a mineral lease upon the 43-acre tract of land to Marrs McLean. A copy of the proposed lease was attached to the application. After due notice, as required by the statute then in force relating to the leasing of the land of minors for mineral purposes, the county judge, in vacation, entered an order directing the making of the lease, and on March 14, 1916, George W. Barngrover, for himself and as guardian for the minors, executed the lease to Marrs McLean; the lease being also signed by C. N. Smith, the county judge.

The lease, by its terms, devised, let, and leased the land to McLean "for the purpose of exploiting the same for and the production of minerals therefrom" and also granted and conveyed "all of the oil, gas and other min-

erals in and under the land, and also the exclusive right of drilling and operating thereon for oil or gas." The grant concluded with an habendum clause. In addition to providing for the royalties to be paid in case of the discovery and production of minerals in paying quantities, which royalty was, on oil, one-eighth, and for rentals, offsets, etc., the provisions usually found in oil leases, the lease contained the following provisions:

"10. It is the understanding of the parties hereto that this agreement has assigned nothing to the lessee except a franchise for development of the mineral resources for the time specified and the option to extend such privileges, but it is understood that in event the lessee or his successors and assigns should sink a well or shaft and discover either oil, gas or other minerals in paying quantities on the premises herein leased then the said lessee shall at once become invested with an estate in and to all minerals underlying said land, with the exclusive right to produce the same so long as such minerals can be produced in paying quantities, paying to the lessor, however, the royalties above described. * * *

"12. It is agreed that this contract and all the terms hereof shall extend to and be binding upon the successors, legal representatives and assigns and successive assigns of such parties, respectively."

The statute in force in Texas at the time of the making of the lease in question authorizing guardians to make mineral leases of the estates of their wards was chapter 44, p. 85, of the General Laws of the 34th Legislature, Gammel's Laws, vol. 17, which became effective March 12, 1915. That act superseded chapter 131 of the General Laws of the Regular Session of the 33d Legislature, approved April 3, 1913, Gammel's Laws, vol. 16. The act of 1913 was the first statute enacted in this state authorizing the making of such leases. The act of 1915, omitting the repealing and emergency clauses, was as follows:

"Section 1. That guardians of the estates of minors or of any other persons, appointed under the laws of the State of Texas, which have heretofore been appointed, or which may hereafter be appointed, shall have the authority to make mineral leases for the estates of their wards.

"Sec. 2. That whenever a guardian of the estate of any persons shall desire to make a mineral lease upon the real estate of his ward, he shall apply to the county judge of the county where such guardianship is pending for authority to make and execute such mineral lease, and such application shall be in writing and sworn to by such guardian, and the county judge, either in term time or in vacation, shall hear such application, and shall require proof as to the necessity and advisability of such mineral lease, and if he shall approve the same, he shall enter an order on the minutes of the Probate Court, either in term time or vacation, authorizing the guardian to make such mineral lease, and the terms upon which it shall be made; provided, that no lease shall extend beyond the time that the ward shall become twenty-one years of age.

"Before such application shall be heard by the county judge, notice of such application shall be given by the guardian for one week prior to the time such application shall be heard, by publishing same in some newspaper of the county where said guardianship is pending for one issue of said paper, and such notice shall state when and where such application shall be heard.

"It is further provided that after notice and hearing of said application and the granting of the same by the Probate Court, that said guardian shall be fully authorized to make mineral lease upon the real estate of his ward in accordance with the judgment of the County Court acting upon the same."

In making the lease, the above statute was strictly complied with, except that the proviso limiting the lease to the minority of the minors was not written into the lease, but instead, section 10 of the lease, which we have set out above, purporting to invest the lessee, his successors and assigns, with an estate in and to all the minerals in the event of the discovery of oil, gas, or other minerals in paying quantities, was in the lease as attached to the application, approved by the county judge, and executed by the guardian.

Marrs McLean assigned an interest in the lease to D. J. Harrison, and thereafter, on the 17th day of November, 1917, McLean and Harrison assigned and conveyed the lease as to the west 35 acres involved in this suit to the defendant Empire Gas & Fuel Company, reserving an overriding one twenty-fourth royalty, of which one thirty-second was payable to McLean and one ninety-sixth to Harrison. It was provided that the delivery and payment of said royalties to them should be in conformity with the terms of the original lease in the same manner that the royalties are paid to the owners of the land.

Plaintiffs D. J. Harrison, Chas. C. McRae, and W. D. Gordon acquired the interest of

McLean in the above-mentioned one twenty-fourth royalty, and it is this royalty which is involved in this suit. The defendants, other than the Humble Oil & Refining Company, which is a mere stakeholder, hold under leases subsequently made to the defendant Empire Gas & Fuel Company by the guardian and by the Barngrover children, purporting to be effective from and after the time each of said minors should become of age.

The Empire Gas & Fuel Company entered under the lease and discovered oil in paying quantities and began operating it as a producing property during the minority of the minors, paying the royalties to the guardian.

The minor George A. Barngrover became 21 years of age on December 20, 1926; Mason Barngrover became 21 years of age on August 11, 1928; and Tina Barngrover became 21 years of age on May 28, 1930. Upon George Barngrover becoming of age in December, 1926, he, through his attorneys, notified the Empire Gas & Fuel Company, the operators of the lease, and the Humble Oil & Refining Company, which was running the oil therefrom, that the guardian's lease as to his one-third interest had expired. The company held up the royalties and paid no further royalties until a new lease was negotiated between it and George A. Barngrover and Will E. Orgain and others, who had succeeded to a part of his interest; the new lease being entered into May 2, 1927. The new lease reserved to the lessors a one-sixth royalty of the oil produced and saved, and further provided that the oil and gas produced from said lease from the date that George A. Barngrover became 21 years of age up until the date of the new lease should be divided between the lessors and lessee, one-eighth royalty to lessors and balance to lessee Empire Gas & Fuel Company. On May 10, 1927, George W. Barngrover, as guardian of the other two children who had not become of age, applied to the probate court for authority to make a mineral lease to the Empire Gas & Fuel Company upon the respective interests of the minors; it being recited in the application that the lease which he gave in 1916 would expire when the minors became of age. In the meantime the statute of 1919, now article 4192 et seq., Revised Statutes of 1925, as amended by Acts 1927, c. 164, § 1 (Vernon's Ann. St. art. 4192), had been enacted. The lease was made in accordance with that statute. Mason Barngrover, upon becoming of age, entered into a new lease with the Empire Gas & Fuel Company as to his interest in the property, and, Tina Barngrover having married in the meantime, entered into a confirmation lease of her interest, save and except two acres, to Empire Gas & Fuel Company. This confirmation lease, in which the husband joined, confirmed the second lease made by the guardian. It will thus be seen that all of the parties who held under the guardian's lease of 1916, other than plaintiffs, who claim the one twenty-fourth overriding royalty here sued for under it, treated that lease as terminating as to each minor's interest upon his becoming 21 years of age. And the defendant Empire Gas & Fuel Company took the new leases to protect itself against such event and in recognition of the validity of the contention.

When this suit was brought by plaintiffs, the defendants, other than Humble Oil & Refining Company, answered by general demurrer, general denial, and pleas of not guilty. The Humble Oil & Refining Company filed answer setting forth that it was a mere stakeholder, having run the oil from the land involved, and tendered into court $52,391.25, being the agreed amount of money due for the one twenty-fourth royalty which had been held up up to the day of the trial.

Upon a trial to the court, a jury being waived, judgment was entered for the defendants. The trial court filed findings of fact and conclusions of law which, after reciting that the facts were without dispute, and were sufficiently reflected by the record, stated the court's conclusion of law as follows: "The court concludes as a matter of law, and that is the sole basis of the decision of the court in this case, that the lease executed by the probate court to Mairs McLean in 1916, under the statute of this state enacted in 1915, which undertook to lease the property as therein set forth beyond the period of the minority of the minors, was an absolutely void act because of the provision in that act that no lease should extend beyond the period when each of said minors becomes 21 years of age."

The controlling question here is whether the lease executed by the guardian and the subsequent discovery and production of oil thereunder before the minors became 21 years of age had the effect of a valid and binding lease on the minors' estate, beyond the time when they each became 21 years of age. Incidentally, appellant's assignments also present the question of ratification of the lease by the minors after they became of age, and the power of the district court on collateral attack, to set aside and declare of no effect the order and judgment of the probate court

authorizing the making of the lease in so far as it sought to bind the minors beyond their minority.

It is evident that plaintiffs' title to the one twenty-fourth overriding royalty must stand or fall with the guardian's lease under which it was reserved. If that lease terminated when the minors became 21 years of age as defendants contend, and as the trial court found that it did, the plaintiffs have no title.

Plaintiffs advance numerous arguments in support of their contention that the lease given by the guardian to Marrs McLean in 1916 did not terminate when the minors became of age. They advance the theory, among others, that the proviso in the statute of 1915 which limited mineral leases of guardians to the period of a ward's minority had reference only to the exploratory period of the lease; that, while a guardian has no power to lease or incumber his ward's land beyond the period of the ward's minority, nevertheless the guardian, under the authority of the probate court, had the right to lease it during the minority, and also had the right to convey the mineral estate in the ward's land upon condition, as was attempted. From this it is reasoned that oil having been discovered in paying quantities and production thereof begun under the lease during the minority of the minors, the lessee became invested with a base or determinable fee title to the minerals which would not terminate so long as production in paying quantities continued. In this case the guardian's lease of 1916 limited the primary or exploratory period to six years, which was well within the period of minority of the oldest ward, and, as we have already said, oil was discovered and production in paying quantities begun during such period.

We do not think the guardian's lease had any such far-reaching effect. True it has been held by our Supreme Court in a number of cases that an ordinary mineral lease has the effect of vesting in the lessee a base or determinable fee title to the mineral estate. Texas Company v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27. But, regardless of the legal effect of an ordinary mineral lease in vesting a base or determinable fee in the lessee, it does not follow that the Legislature, by the act of 1915, meant to empower the probate court to so convey the mineral estate of a ward, or that the term "lease," as used in the act, referred only to the "exploratory period." The power conferred was to lease,

and the restriction was that "no lease shall extend beyond the time that the ward shall become twenty-one years of age."

This question was before the United States Circuit Court of Appeals for the Fifth Circuit in Gordon et al. v. Empire Gas & Fuel Co., 63 F.(2d) 487, 488. Incidentally, that case involved a construction of the same lease which is now before us. It was there contended, as it is here, that the effect of the lease was to vest title to the mineral estate in the lessee under the act of 1915; also that it amounted to a sale of the minerals under the general statute, which empowered the probate court to make sale of the minors' real estate under certain conditions. In holding that the lease vested no title to the mineral estate in the lessee, Judge Sibley, in the course of the opinion, said: "We do not stop to inquire whether the procedure was also sufficient to support the transaction as a sale of the minors' minerals under the old statutes, because we think the proviso above quoted (limiting the lease to the period of the minority of the minors) is controlling under any form of procedure. The Legislature may regulate the disposal of the lands of minors, conditioning or even prohibiting it. It did by this act prohibit a disposal by 'mineral lease' beyond the ward's minority. Neither the contract of the guardian nor the order of the court could annul the statute. That the present instrument is a 'mineral lease' we have no doubt. It was so called throughout its making, and in the assignment under which appellants claim."

It is true that this holding of the United States Circuit Court is not binding upon us here, but the opinion is persuasive as a determination of the law issue involved by an able court, and the clear and logical reasoning of the learned judge who wrote the opinion, we think, clearly demonstrates the correctness of the conclusion reached. But, in addition to the reasons assigned by Judge Sibley for the holding, we will add that it seems to us wholly immaterial so far as the question involved is concerned whether the lease executed by the guardian under the act of 1915 had the effect of conveying a base or determinable fee or merely conferred a license or privilege. In any case, whatever the nature of the estate created was, it terminated when the minors became 21 years of age by the terms of the very act under which it was granted. Thus the statute imposed an added condition which determined such leases.

As to the contention that the lease was a "sale" of the minerals under the general statute, we will only add to what we have quoted above from the opinion of Judge Sibley the further statement that no attempt was made to comply with the general sales statute. There was no report or confirmation, and, in the absence of a confirmation order in the probate minutes, any such purported sale would have been void.

It is further argued that, regardless of whether the lease was sufficient, as an original proposition, to bind the estate of the wards beyond their minority, the judgment of the probate court of Liberty county, in approving the lease and ordering the guardian to execute it, could only be revised by direct appeal, and is not subject to collateral impeachment in the district court. In this connection the plaintiffs argue that under article 5, section 16, of the Texas Constitution, the probate court of Liberty county had general jurisdiction as a probate court "appertaining to deceased persons, minors * * * including the settlement, partition and distribution of estates of deceased persons," and that, having general jurisdiction, the court had a right, on such terms and conditions as it saw fit, to give a lease on the minors' estate during their minority and upon such conditions as it saw fit to prescribe to make a conveyance of the mineral rights of the minor; in other words, that the probate court of Liberty county had jurisdiction of the parties and of the subject-matter and that consequently the presumption of regularity indulged in its favor will shield the judgment from collateral impeachment. This proposition assumes that the probate court, in the making of the lease, acted within its powers. The term "jurisdiction" means more than simply having the parties and the subject-matter, that is, the res, before the court. For any court to act within its jurisdiction, in the sense that its judgment is immune from collateral attack, it must not only have jurisdiction of the parties and of the res or property to be dealt with, but it must also have the power to enter the kind of order, judgment, or decree which is the subject of the attack. Cline v. Niblo, 117 Tex. 474, 8 S.W.(2d) 633, 638, 66 A. L. R. 916; Smith v. Paschal (Tex. Com. App.) 1 S.W.(2d) 1086; Freeman on Judgments (5th Ed.) § 372.

It has long been recognized in this state that probate courts have only such powers as are delegated to them by statute. St. Paul Sanitarium v. Crim, 38 Tex. Civ. App. 1, 84 S. W. 1114 (writ of error denied); Marks v. Hill, 46 Tex. 345; Smith v. Paschal, supra; Cline v. Niblo, supra. The Constitution, in conferring upon the county court or probate court exclusive original jurisdiction as to estates of minors, deceased persons, etc., simply conferred upon such court the general powers to administer the probate law. The specific powers to be exercised by the probate court and the manner of their exercise was left to statutory regulation by the Legislature.

In Cline v. Niblo, supra, Chief Justice Cureton, in holding that the sale of a homestead by a probate court was void and subject to collateral impeachment where the judgment of the probate court did not specifically show the existence of the conditions which would have authorized the sale of the homestead, quoted with approval from Freeman on Judgments the following: "This well-established doctrine, that a judgment beyond the court's power is invalid, is not limited in its application to any particular kind of judgment nor is it peculiar to the judgments of any particular court. Irrespective of the character or dignity of the tribunal pronouncing the decision, whether of inferior, limited or superior general jurisdiction, it must confine its determination within the authority it possesses under the law and the case. If the court is exercising special statutory powers the measure of its authority is the statute itself, and a judgment in excess thereof is null and void and subject to collateral attack, a rule which finds frequent application in the case of probate judgments."

In the case before us the probate court of Liberty county was acting under a statute which not only conferred upon it the specific power to lease the wards' land, but also specified the manner in which the power was to be exercised and the limitations upon the power thus granted. Thus the "course of the court" was marked out by the act, and the power to lease, specifically limited. No grant or lease not made in conformity with it could have any validity, nor could it confer any title not authorized by it. Therefore, in so far as the probate court assumed to lease the land of the minors beyond the time of their minority, it acted wholly without authority, and to that extent its judgment was a nullity. That the judgment was void in that respect was apparent upon the face of it. Being a nullity, it was subject to attack

in any court, and there can be no doubt that the trial court was correct in so holding.

■ The plaintiffs also urge a proposition that the Barngrover minors, by their acts, ratified and confirmed the lease given by the guardian in 1916 after they became of age. We find nothing in the record which would amount to a ratification. True, in executing the subsequent leases, they all recognized the validity of the guardian's lease, but only to the extent that it sought to bind their estate during their minority. The very execution of the subsequent leases, to become effective from the time when they reached their respective majorities, constituted a direct and positive repudiation of the act of the guardian in so far as he attempted to bind them beyond the period of their minority.

In addition to the ground upon which we affirm the judgment, the defendants advance several other grounds for an affirmance. Among them, it is urged that the royalty here sued for is personal property, which is not an interest recoverable in an action of trespass to try title. It is also contended that the judgment of the federal District Court in Gordon v. Empire Gas & Fuel Company, above referred to, although the defendants other than the Empire Gas & Fuel Company were not parties to it, nevertheless served to divest any title which the plaintiffs had to the royalties here sued for out of them, and they cannot maintain this suit for that reason. We do not discuss these propositions because to do so would require extensive quotations from the record and unnecessarily prolong this opinion. We are thoroughly satisfied to rest our affirmance of this case upon the proposition announced by the trial court, that, in so far as the probate court of Liberty county attempted to lease the ward's land beyond the time of their minority, its act was a nullity and the plaintiffs have no title.

The judgment is affirmed.