AMERADA PETROLEUM CORPORATION
v. CHEESMAN et al.

No. 11947.

Court of Civil Appeals of Texas.
San Antonio.

May 4, 1949.

Rehearing Denied June 1, 1949.

Renfro & Kilgore, Dallas, Harry D. Page, Tulsa, John Stofer, Victoria, for appellant.

Bryan, Suhr & Bering, Houston, E. H. Suhr, Houston, for appellees.

W. O. MURRAY, Justice.

This suit was instituted by D. C. Cheesman in the District Court of Victoria County, Texas, against Amerada Petroleum Corporation and Paul Alois Skarda, seeking to establish his undivided one-half interest of the seven-eighths leasehold working interest in the oil, gas and other minerals situated in and under Lots 19 and 20 in Block 2 of the Cameron Addition to the Town of Bloomington, Victoria County, Texas, and to have his one-half interest in said minerals partitioned to him in kind.

A trial was had before the court without the intervention of a jury and resulted in the finding that D. C. Cheesman and Amerada Petroleum Corporation each owned a one-half undivided interest in the seven-eighths leasehold working interest in and to all the oil, gas and other minerals in and under Lots 19 and 20 in said Block 2, and further partitioning same in kind by awarding to D. C. Cheesman all of the seven-eighths leasehold working interest in and to all the oil, gas and other minerals in and under said Lot 19, and a like award to the Amerada Petroleum Corporation leasehold working interest in and to all the oil, gas and other minerals in and under said Lot 20 of said block. From that judgment Amerada Petroleum Corporation has prosecuted this appeal.

Appellant's first contention is that the court erred in holding that Amerada Petroleum Corporation did not own the entire seven-eighths leasehold working interest in and to all of the oil, gas and other minerals in and under Lots 19 and 20 of said Block 2.

Whether or not Amerada owned this entire interest depends upon the construction given to certain probate proceedings had in the County Probate Court of Victoria County, Texas. Mrs. Monta E. Harvey, as guardian of Paul Alois Skarda, made application to the Probate Court of Victoria County asking for authority to execute an oil and gas lease upon an undivided one-half interest in Lots 19 and 20 of said Block 2. In the notice given on said application the interest to be leased was again described as an undivided one-half interest in and to said Lots 19 and 20. In the order of the probate court granting the application the guardian was authorized to make, execute and deliver an oil, gas and mineral lease of the en-

tire undivided interest of said ward on the above described real estate for the consideration of $10 to the Amerada Petroleum Corporation as lessee. Afterwards Mrs. Harvey executed a lease in her individual capacity and in her representative capacity as guardian of the estate of Paul Alois Skarda, a minor, to the Amerada Petroleum Corporation upon the following described land in Victoria County, Texas, belonging to said minor, to wit: "All of Lots Nineteen (19) and Twenty (20) in Block Two (2) in the Cameron Addition to the Town of Bloomington, Texas, according to the plat of said Cameron Addition duly recorded in Vol. 68, at page 457, Deed Records of Victoria County, Texas, to which reference is here made.

"This lease also covers and includes all land owned or claimed by lessor adjacent or contiguous to the land particularly described above, whether the same be in said survey or surveys or in adjacent surveys, although not included within the boundaries of the land particularly described above."

The market value of oil leases in that area at that time was $5 per lot, and Amerada paid the sum of $10 for this lease. Paul Alois Skarda owned Lots 19 and 20, and not merely a one-half interest therein. It is appellant's contention that, as a result of this lease executed by Mrs. Harvey and the proceedings had in the Probate Court of Victoria County, Texas, it obtained an oil, gas and mineral lease on Lots 19 and 20, and not simply a lease on the one-half interest of said lots. We overrule this contention.

■ In passing upon this question, all the proceedings had in the probate court must be taken into consideration, and they constitute a part of the chain of title of appellant. The application was to lease an undivided one-half interest in these two lots. The notice given of this application was to the same effect and therefore Mrs. Harvey as guardian had no authority to execute a lease on more than a one-half interest in these two lots. Her power to convey was limited to the undivided one-half interest in the two lots contained in the application and notice.

Mathews v. Myers, Tex.Civ.App., 42 S.W. 2d 1099; Greene v. Robison, 117 Tex. 516, 8 S.W.2d 655; Smith v. Patrick, Tex.Civ. App., 297 S.W. 482; Schaeffer v. Williams, Tex.Civ.App., 208 S.W. 220.

Later D. C. Cheesman acquired an oil and gas lease upon the undivided one-half interest which was retained by Paul Alois Skarda, and the court properly held that he owned an undivided one-half interest in the seven-eighths leasehold working interest of the oil, gas and other minerals in and under said Lots 19 and 20.

■ Appellant next contends that the trial court erred in finding that the property in controversy was subject to equitable partition in kind. We overrule this contention. The evidence shows that the mineral leasehold estate under each square foot of these two lots is equal in value to the leasehold estate under each other square foot thereof, and that when partitioned into two halves, the mineral leasehold estate under each half will be equal in value to the other half and that the aggregate value of said two halves will be equal to the value of the whole, and that these two lots are in an area which has been proven for oil, but that no wells have been drilled on either lot. Appellant owns mineral leases on the lands adjoining said two lots on the east, south and west. It has pooled its interest in Lots 19 and 20 into a unit of approximately 19.8 acres on which unit it has drilled two producing wells within two hundred feet of the easterly line of Lot 20 awarded to appellant here. Appellant further contends that under the policy of the Railroad Commission of Texas only one permit can be obtained to drill a well on these two lots, and that if the two lots are to be partitioned in kind whichever owner first secures a permit to drill a well on the lot awarded to him will be able to drain all of the oil from underneath the other lot.

■ We cannot anticipate just what action the Railroad Commission of Texas will take with reference to granting a permit to drill upon these two lots, but we must assume that they will in some way handle this matter so as to be fair and

just and equitable between the two owners. Under the findings of the court, these two lots are partitionable in kind and, inasmuch as the law favors such a partition in kind, we see no reason to set aside the judgment in this respect.

In Humble Oil & Refining Company v. Lasseter, Tex.Civ.App., 95 S.W.2d 730, 731, the court said:

"It is well settled that the law favors a partition in kind, rather than a sale and a partition of the proceeds. * * *

"Every acre of the tract involved is admittedly oil-producing land. * * *

"When we treat the tract of land here involved as of equal value, acre for acre, we are of the opinion that the rule for partition adopted in Henderson v. Chesley, supra [Tex.Civ.App., 273 S.W. 299], should be adopted in this case, and the mineral estate divided by a division of the surface of the land as was done by the trial court. * * *

"We do not believe appellant's contention should be sustained. Surely the inequities complained of will not necessarily follow a partition of the land in kind. The whole business of regulating the production of oil and gas in Texas has been intrusted to the Railroad Commission of the state by the Legislature, and it is made the duty of such commission to prevent just such inequities as appellant asserts will follow a partition in kind of the land. Brown v. Humble Oil & Refining Co., supra [126 Tex. 296, 83 S.W.2d 935, 99 A.L.R. 1107]. In this case our Supreme Court reviewed at length rule 37 and the right of the commission to grant exceptions to it, and held that it was the duty of the Railroad Commission in granting exceptions to rule 37 to limit the flow of oil from wells drilled under such exceptions to the extent necessary to overcome any advantage such a well might have over one which had complied with the rule. And in this connection the court further said: 'No unreasonable hardships need result, if the rule is faithfully impartially applied by those authorized by law to administer it.'

"It seems to us that the legal effect of sustaining appellant's contention under the facts of this case would be to substitute the judgment of the district court on matters which are by law placed exclusively in the first instance in the jurisdiction and discretion of the Railroad Commission of this state."

See also: Burton v. Williams, Tex.Civ. App., 195 S.W.2d 245; Adams v. Adams, Tex.Civ.App., 205 S.W.2d 801; White v. Smyth, Tex.Civ.App., 214 S.W.2d 953, affirmed Tex.Sup., 214 S.W.2d 967, 5 A.L.R. 2d 1348; Thomas v. Stanolind Oil & Gas Company, 145 Tex. 270, 198 S.W.2d 420; Trapp v. Shell Oil Company, 145 Tex. 323, 198 S.W.2d 424.

The judgment of the trial court is affirmed.