**CHEESMAN et al. v. AMERADA PETROLEUM CORPORATION.**

No. 9846.

Court of Civil Appeals of Texas. Austin.
Jan. 18, 1950.

Rehearing Denied Feb. 15, 1950.

Second Rehearing Denied March 8, 1950.

Bryan, Suhr & Bering, of Houston, Price Daniel, Attorney General of Texas, and Durwood M. Goolsby, Assistant Attorney General, for appellants.

Powell, Wirtz & Rauhut, of Austin, Harry D. Page, of Tulsa, Okl., for appellee.

ARCHER, Chief Justice.

This is a Rule 37 suit, filed by appellee as plaintiff against the Railroad Commission of Texas, its members, and the appellants, to cancel order granting solely on the confiscation grounds of exception permit to drill D. C. Cheesman & Son No. 1 Skarda on Lot 19, Block 2, Cameron Addition, Bloomington Field, Victoria County, and to enjoin drilling and operation of the well. The appeal is from judgment for plaintiff, rendered after trial to the court, in cause No. 83,248, styled Amerada Petroleum Corporation v. D. C. Cheesman et al., 98th District Court, Travis County. Findings of fact and conclusions of law were not requested or filed.

The appellants assign as error three points: the first, that no well has been drilled, or is in process of being drilled, on the lots or either of them, and that the right to drill exists, notwithstanding a partition of the lots, there being substantial evidence at the time the permit was granted that oil was being drained from beneath the lots by other wells, one within 125 feet and another 150 feet away, and to some extent by other wells, and that the permit was therefore supported by substantial evidence at the time the permit was granted and at the time the case was tried; and by the second, that no well having been drilled, or in the process of being drilled, on Lots 19 and 20, or either of them, and that oil was being drained, which was not created by the partition of the two mineral leasehold estates but exists notwithstanding such partition; and third, that although the application for permit was for a well to be drilled on Lot 19, and did not state that it was based on the rights as they existed prior to the partition of the lots, the Commission had before it the leases, the decree partitioning the two leasehold estates, the brief in support of the application, in which it was stated that the right to the permit was based on Skarda's ownership of such two lots and no more, and that the permit must be based on the right of both lots prior to the partition, was fully before the Commission when it granted the permit.

The application for the permit made by D. C. Cheesman & Son, dated November 24, 1948, described the lease as "one Town Lot No. 19, Block 2 of the Cameron Addition to Town of Bloomington, for one well," and the location as shown on the map attached is in the center of Lot No. 19, 25 feet from its east and west lines and 75 feet from its north or northern line, with lines indicating the nearest wells by directions and distances. The notices stated that the application was for a permit to drill one well on Lot 19, with requested location, and the permit was granted to prevent confiscation of property to drill well No. 1, Paul Alois Skarda Lot 19, Block 2, L. A. Cameron Addition, as shown by plat submitted.

█ The permit, therefore, was applied for and granted to prevent confiscation, not on the entire tract (2 lots) as it originally existed, but upon a subdivision thereof (Lot 19), and is not valid; and the trial court's judgment should be affirmed, but without prejudice to an application for a permit to drill a well on the entire unit (2 lots), such well to be located by the Commission. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73; Humble Oil & Refining Co. v. Cook, Tex.Civ.App., 215 S.W.2d 383; Railroad Commission v. Miller, Tex.Civ. App., 165 S.W.2d 504; Humble Oil & Refining Co. v. Potter, Tex.Civ.App., 143 S.W. 2d 135.

The oil and gas lease executed by Monta E. Harvey individually (who had no interest in the property—see Amerada Petroleum Corporation v. Cheesman, Tex.Civ.App.,

223 S.W.2d 74) and as guardian of the estate of Paul Alois Skarda, a minor, who owned both of the lots on March 2, 1946, purportedly covered the entire interest in both lots, and contained a provision authorizing the lessee, at its option, to pool or combine the acreage covered by the lease, or any portion thereof, with other land, lease or leases in the immediate vicinity thereof; and further provided for acreage units for oil, distillate and gas; and in lieu of the royalties elsewhere specified the lessee would receive only such portion of the royalty stipulated as the amount of his acreage placed in the unit bears to the total acreage so pooled in the particular unit.

Pursuant to the pooling clause in the Skarda lease and numerous others which it owned, the Amerada Petroleum Corporation filed for record an instrument entitled "Designation of a Unit," embracing an area known as the "Stolz et al Unit," containing 19.84 acres.

██ We do not believe that the pooling clause in the lease from the guardian of Skarda was valid, or, if at all, beyond the time the ward became twenty-one years of age. The minor has now attained his majority.

Section 5 of Art. 4192, Vernon's Ann. Civ. St. provided: "No such lease shall extend beyond the time that the ward shall become twenty-one years of age, unless at that time the lessee shall have discovered such minerals as are specified in the lease, or any of such minerals, upon the premises described in such lease, in which event the same shall remain in full force so long as such minerals or any of them shall be produced in paying quantities. * * *"

Article 4192a, enacted by the 49th Legislature, Gen.Laws 1945, c. 80, limited the right of a guardian to pool the gas under the ward's land and not the oil, and Section 7 states that: "The fact that there is now no law authorizing guardians of the estates of minors or of other persons, to make or enter into pooling or unitization agreement with the result, in some instances, that gas is being drained from the ward's real estate, creates an emergency * * *."

The 51st Legislature passed the new act, Chapter 259, Senate Bill 24, Vernon's Ann. Civ.St. art. 6008b, authorizing cooperative development, which incorporates the old Article 4192a, Vernon's Texas Session Law Service, pages 477–483, and again states in Section 7: "The fact that existing laws provide only for the cooperative development and operation for gas in the same field, with no provision for the cooperative development for oil in the same field; * * * and the fact that existing laws do not authorize administrators, executors, guardians, or other fiduciaries administering estates under the control and jurisdiction of County Courts to make such agreements, all constitute serious deficiencies in existing law, and create an emergency * * *."

See Neal v. Holt, Tex.Civ.App., 69 S.W. 2d 603; Jones v. Sun Oil Co., 137 Tex. 353, 153 S.W.2d 571; and Harrison v. Barngrover, Tex.Civ.App., 72 S.W.2d 971, writ refused.

The judgment of the trial court is affirmed but without prejudice to the rights of interested parties to again apply to the Commission for a well in accord with the grounds above stated.

Affirmed, without prejudice.

On Appellee's Motion for Rehearing.

PER CURIAM.

Amerada, pointing out that lessor Akarda is not a party to this suit, questions our authority to determine the validity of the pooling agreement in its lease.

It must be remembered that the Commission granted the permit which Amerada attacked by filing suit in the court below. The permit carried a prima facie presumption of validity. 31a Tex.Jur., p. 630. The burden was on Amerada to overcome this presumption. It attempted to do so, in part, by fully alleging and relying upon the validity and effect of the pooling agreement.

Amerada's first point in its brief filed in this court is based upon the pooling agreement and in the first paragraph of the statement made under this point, the pooling agreement is copied.

■ We realize that the Commission cannot adjudicate the validity of this agreement any more than it can adjudicate title, but we believe it has the same power to appraise objections made to the issuance of a permit as it has to appraise the title upon which an application for a permit is based. The rule as to title is that the applicant must make a "* * * reasonably satisfactory showing of a good-faith claim of ownership * * *." Magnolia Petroleum Co. v. Railroad Commission, 141 Tex. 96, 170 S.W.2d 189, 191.

■ Applying the principle of this rule to this case we are convinced that a "reasonably satisfactory showing of a good-faith" objection to the application is not made when the objection is founded upon what we consider to be a void agreement.

With this explanation of what was said in our original opinion, Amerada's motion for rehearing is overruled.

Overruled.