**AMERADA PETROLEUM CORP. v. MASSAD et al.**

No. 4768.

Court of Civil Appeals of Texas. El Paso.

Nov. 22, 1950.

Rehearing Denied Jan. 17, 1951.

Harry D. Page, Tulsa, Okl., John G. Stofer, Victoria, Kilgore & Kilgore, Dallas, for appellant.

Barnes & Barnes, Terrell, for appellees.

PRICE, Chief Justice.

This is an appeal by the Amerada Petroleum Corporation, hereinafter called Amerada, from part of a judgment of the District Court of Victoria County. The action involved the title to the mineral estate in the following described property: Lot 6 in Block 60 of Bloomington Townsite, Victoria County, Texas, according to a plat thereof recorded in Volume 58, p. 222 of the Deed Records of Victoria County, Texas. The judgment awarded a 9/7 interest in the property to Ignacio Salinas in fee subject to an oil and mineral lease held and owned by Amerada. It further awarded to Carmen Quintanilla and Manuel Salinas each an undivided 1/14 interest in fee, subject to an oil, gas and mineral lease owned by defendant Ralph Massad on such interest. The judgment further partitioned the leases of Amerada and Massad. Amerada insisted that the property could not be justly partitioned in kind, but if in the judgment of the court there should be a partition in kind the court might do so without the appointment of commissioners. Amerada assailed and excepted to the provision as to a partition in kind.

Amerada appeals from that portion of the judgment awarding to Massad an oil and gas lease on 1/7 of the property, and that portion ordering a partition in kind.

Amerada was plaintiff in the action; the wife of Felix Salinas, deceased, and the sons and daughters of the said Felix Salinas, and Ralph Massad claiming an oil and gas lease on a 1/7 interest in the property involved were parties to the proceedings.

The pleadings in this case are detailed and lengthy and it is deemed unnecessary to set them out in substance. After the evidence was closed the respective parties moved for judgment in their favor. The court decided that there was no issue of fact for the jury and withdrew the case from the jury and entered judgment as aforesaid.

It was stipulated that Earl C. Rydolph was invested with the title to the property in controversy on July 29, 1925. The property in question was deeded to Felix Salinas, Sr., by Earl C. Rydolph and his wife on December 14, 1938. Felix Salinas, Sr., died intestate prior to this controversy. He left surviving him a wife, Carmen Salinas, and seven children. The wife and said children were all parties defendants herein and they were all cross-plaintiffs. If Felix Salinas, Sr., had anything but the bare legal title to the property it was community property. On May 30, 1946, Carmen Salinas, Felix Salinas, Jr., Octavio Salinas, Manuel Salinas, Julia Cantu joined by her husband, Concepcion Espinosa joined by her husband, Joe Espinosa, exe-

cuted and delivered a deed purporting to convey the property to Ignacio Salinas. The grantors were the wife of Felix Salinas, Sr., and the other grantors constituted all but three of the children of Felix Salinas, Sr. Ignacio Salinas, the grantee, was the youngest child of Felix Salinas. On June 1, 1946, Ignacio Salinas executed and delivered to Amerada an oil, gas and mineral lease on the property in question. On April 17, 1948, Manuel Salinas executed and delivered to Ralph Massad an oil and gas lease on the premises in question. On April 15, 1948, Carmen Quintanilla and her husband executed and delivered to Ralph Massad an oil and gas lease on the premises in controversy. Manuel Salinas was the son of Felix Salinas and Carmen Quintanilla a daughter. Neither joined in the deed with the other children of Felix Salinas to their brother Ignacio.

The controversy as to the title is confined to the ½ interest adjudged to be held by a valid lease by Ralph Massad. Amerada contends that at all relevant times their grantor, Ignacio Salinas, held the equitable title to this ½ interest; that Felix Salinas, Sr., held the legal title to the property for the use and benefit of his son Ignacio; that the property was purchased in the name of Felix Salinas, Sr., but with the funds of Ignacio; that if as a matter of law a resulting trust in favor of Ignacio was not established the evidence was sufficient to raise that issue and the court erred in taking the issue away from the jury.

In substance it was stipulated that Earl C. Rydolph and wife were the common source of title. On December 14, 1938, said Rydolph and wife executed and delivered a deed conveying the property to Felix Salinas, Sr. As consideration the deed recites $1 in cash and a note in the sum of $50 dated December 14, 1938, and payable August 15, 1939.

Present at the time Felix Salinas, Sr., bargained for the property were Felix Salinas, Jr., and Ralph De Leon, who died before the trial, Rydolph and his wife. His wife remembered the $50 note but could not say what was paid in cash for the property. She remembered that Salinas, Sr., said he wanted Ignacio to have the property. She remembered that Salinas, Sr., said he and Ignacio had to raise the money and he depended on the boy for the labor because he was not so well. Felix Salinas, Jr. testified by deposition. In substance he stated he was present when the lot was bargained for. He did not remember what was paid down on the property but he thought it was $80 or $90. His father, Felix Salinas, Sr., worked; he worked for a man named Joe Cook and was working for him when he died.

Joe Cook testified in substance that Ignacio and his father worked for him from time to time; that the father told him the property belonged to Ignacio; he paid Salinas, Sr., for the work performed by the two.

There is no direct evidence in the Statement of Facts that Ignacio ever paid the note given in part payment of the land. There is a total lack of evidence that Ignacio was ever bound to pay the note, likewise a total lack of evidence that his father paid the note with the funds of Ignacio, or that if his father paid the note out of his own funds Ignacio was bound to pay him.

A deed is presumed to truly evidence the act in law which by its provisions it attests. The burden is upon the one asserting that the beneficial title is held by the grantee for another. 42 Tex.Jur. p. 686, par. 75–76; Clayton v. Ancell, 140 Tex. 441, 168 S.W.2d 230. However, beneficial title may be shown by parol to rest in another and the legal title is held in trust by the grantee for the benefit of such other person. In order to so engraft the trust by parol on the legal title the evidence must be satisfactory and convincing. McCoy's Heirs v. Crawford, 9 Tex. 353; 42 Tex. Jur. p. 630, par. 70; Clayton v. Ancell, supra. To be convincing and satisfactory it is not meant that such evidence is necessarily uncontradicted. A preponderance of the evidence is sufficient if it clearly and definitely attests the facts which give rise to the trust asserted. 42 Tex.Jur. p. 688, par. 76; Berry v. Rhine, Tex.Civ.App., 205 S.W.2d 632. In order to engraft a parol trust on the legal title same must arise at

the very moment the legal title passes to the grantee. Wright v. Wright, 134 Tex. 82, 132 S.W.2d 847, and cases therein cited; 42 Tex.Jur. p. 642, par. 39. In this case Amerada relies on as establishing the trust in favor of its grantor, Ignacio Salinas, the asserted fact that the consideration paid for the property was paid out of the funds of Ignacio. Beyond any question the cash payment, if any there was, was actually made by Felix Salinas, Sr., the grantee in the deed. The amount of the cash payment is not established with any degree of definiteness and certainty. Felix Salinas testified he did not remember how much was paid down on the property, that he did not remember whether it was $80 or $90. There was evidence that Felix Salinas, Sr., contracted and performed work for Joe Cook and collected the money therefore. Ignacio assisted in the performance of this work. There is no evidence of a contract, if any there was, between Felix Salinas, Sr., and Ignacio. There is evidence that Felix Salinas stated to the witness Cook that they needed money to pay on Ignacio's place. This must have related to the payment on the $50 note. Felix Salinas, Sr., worked for Joe Cook in 1940 or 1941.

 The mere payment of the note by Ignacio Salinas would give no right in the property unless on the date of its execution Ignacio was legally obligated to Felix Salinas to pay same, or to pay to his father any amount he might pay on the note. There is no evidence that Ignacio was under any such obligation. Besides, there is no substantial evidence that Felix Salinas, Sr., paid the note with funds belonging to Ignacio. In our opinion the evidence is insufficient as a matter of law to raise the issue that Felix Salinas, Sr., made a cash payment on the property of $80 or $90 out of the funds of Ignacio. There is no evidence to raise the issue that the note was paid out of the funds of Ignacio, no evidence that Ignacio was under any legal obligation to pay his father the amount his father paid on the note. The court did not err in confining the recovery of Ignacio Salinas and Amerada to a 9/7 interest in the property.

If as a matter of law the evidence failed to establish title in Amerada to the undivided 1/7 interest in controversy, this interest was vested in the two children that did not convey their interest to Ignacio. It follows further the mineral and oil lease these two executed to Massad was in all respects valid as to the 1/7 interest. In our opinion the evidence is not clear and satisfactory as to the amount of the cash payment; not clear and satisfactory that it was made from funds belonging to Ignacio Salinas. There is a total lack of evidence that funds of Ignacio were used in the payment of the note. The point of error asserting that the evidence was sufficient to raise the issue of resulting trust in favor of Ignacio as to the property in controversy is overruled.

There is a point of error asserting the court erred in ordering the property partitioned in kind. Amerada agreed that if the court ordered the property partitioned in kind that it might consummate the partition without appointing Commissioners. This property has a width of 50 feet and a depth of 150 feet. We presume that it was substantially a parallelogram. It is proven oil land. The court partitioned 1/7 of the area to two of the children of Felix Salinas, Sr., and Ralph Massad, 9/7 to Ignacio and Amerada. Amerada prior to the judgment had pooled the property in question with approximately 34 acres, but not on the property in controversy here.

██ The main objection to the partitioning of this property in kind is the small area awarded to the respective lessees. In order to effect a partition by sale the respective leases of Amerada and Massad would necessarily have to be sold. Amerada and Massad are not joint lessees, they hold separate leases from different lessors. The purchaser or purchasers would acquire only the title and rights conferred by the lease purchased. It is insisted that under the spacing rule adopted by the Railroad Commission as to this oil field there will be trouble as to drilling permits. There has never been a voluntary subdivision of this small parcel of land. The Railroad Commission has power in order to prevent danger of confiscation to grant permits

despite the spacing rule. A problem for the Railroad Commission is presented, and not for the court.

There is no question of the power of the court to order a sale if it is necessary to effect a partition. Texas Rules of Civil Procedure, rule 770, amended Oct. 12, 1949. This tract of land is known and proven oil land. Amerada unitized it into a tract or plot of practically 34 acres. The strong probabilities are that the oil underlying this tract is throughout the tract of the same quality and volume. It is not thought that the objection to a partition in kind presented in the case of White v. Smyth, 147 Tex. 272, 214 S.W.2d 967, 5 A.L.R.2d 1348, exists. Here it is proven, as nearly as it can be proven, that oil underlies this land. In our opinion the only just and practical way to have partitioned these in-. terests was adopted by the trial court.

Henderson v. Chesley, Tex.Civ.App., 273 S.W. 299; see also 116 Tex. 355, 292 S.W. 156; Humble Oil & Refining Co. v. Lassiter, Tex.Civ.App., 95 S.W.2d 730; Amerada Pet. Corp. v. Cheesman, Tex. Civ.App., 223 S.W.2d 74, (Wr.Ref.N.R. E.).

There is no assignment that the Court should have submitted to the jury the matter of partitioning.

We find no reversible error in this case and it is ordered that same be in all things affirmed.

McGILL, J., not participating.

On Appellant's Motion for Rehearing.

PRICE, Chief Justice.

We have carefully considered appellant's motion for rehearing herein, but adhere to the original ruling in this case.

There is one ground of the motion we shall notice briefly. It is said that the court erred in stating that Ralph Massad made a motion for an instructed verdict. What we did state was that the respective parties made motion for instructed verdicts. In the brief appellant's third and fourth points of error complain of the court's sus- taining Ralph Massad's motion for an in- structed verdict. It is not deemed, how- ever, important as to whether Ralph Mas- sad did or did not make a motion for an instructed verdict as the other parties did. Appellant unquestionably urged as error in his original brief the granting of a mo- tion of Ralph Massad.