**MILES v. AMERADA PETROLEUM CORP. et al.**

No. 4756.

Court of Civil Appeals of Texas. El Paso.

Dec. 6, 1950.

Rehearing Denied March 7, 1951.

Vinson, Elkins, Weems & Francis, Houston, for appellant.

Harry D. Page, Tulsa, Okl., John G. Stofer, Victoria, Kilgore & Kilgore, Dallas, Gist & Wilson, Tyler, for appellees.

PRICE, Chief Justice.

This is an appeal by C. A. Miles, Jr., hereinafter called Appellant, from the judgment of the District Court of Victoria County in favor of Amerada Petroleum Corporation and Ross Walker. Defendant Amerada Petroleum Company will be hereinafter referred to as Appellee, and defendant Ross Walker as Walker.

Appellant as plaintiff sought to recover from Amerada an undivided ⅙ mineral interest in and to the following described property, to-wit: Situated in Victoria County, Texas, and being all of lots 1 and 2 of block 3 of the J. W. Brown Addition to the Town of Bloomington, Victoria County, Texas, according to a map of said addition referred to in the pleading.

The judgment denied recovery of the ⅙ mineral interest free from a mineral lease thereon claimed by appellee.

The facts in this case are undisputed; the problem presented is the correct application of the law to the facts.

The property involved is two town lots each fifty feet in width and having a depth between parallel lines of 140 feet. J. J. Liggins is the common source of title. Appellee claims under an oil and gas lease executed on the 25th day of August, 1947, by the guardian of Frank James Liggins, a minor 9 years of age, and Evan Liggins, a minor two years of age. On the date of the lease to Amerada and the conveyance to Miles hereinafter referred to there is no question but that the said minors held title to the ⅙ interest as heirs of their father, J. J. Liggins. Appellant claimed under a conveyance subsequent to said lease from the guardian of said minors to said ⅙ mineral interest in said tract. There is no question but that the said conveyance conveyed to Miles such interest as the minors had in the minerals underlying the lots in question on the date it was executed. In making the lease to appellee all requisites of the law were complied with as to application by the guardian, notice thereof, order of the Probate Court authorizing the lease, report of the consummation of the lease and order of the Probate Court confirming same and the filing of bond by the guardian. As has been stated, the same is true as to the sale to appellant.

The making of mineral leases by Guardian of the Estate of minors is governed by Art. 4192, Vernon's Ann.Civ.St., which was in force at the time this lease was executed. In the making of the lease to appellee, as has been stated, the law was in all respects complied with as to notice, authorization, confirmation and bond as required by said Article. The lease to appellee contained a unitization provision as follows: "4. Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in Lessee's judgment it is necessary or advisable to do so in order properly to develop and operator said premises in compliance with the spacing rules of the Railroad Commission of Texas or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of the oil and gas in and under and that may be produced from said premises, such pooling to be into a unit or units not exceeding 40 acres each for oil, 160 acres each for distillate and 640 acres each for gas. Lessee shall execute in writing an instrument identifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall

be treated, for all purposes except the payment of royalties on production from the pooled unit, as if it were included in this lease. If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not. In lieu of the royalties elsewhere herein specified, Lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein on an acreage bears to the total acreage so pooled in the particular unit involved."

Appellee held leases on several lots bordering on and adjacent to the lots in controversy; the leases all contained substantially this provision. It might be here mentioned that the primary term in the lease from the guardian to appellee was for a term of one year.

In accordance with the unitization clause in this lease and in the other leases appellee unitized these two lots with adjacent property upon which it held oil and gas leases, the area of the unit being about 39 acres. Production of oil and gas in paying quantities was developed on the unit, there being three producing oil wells thereon but none of these wells were drilled on the property in controversy. Appellant claims that the unitization provision in the lease from the guardian of the minors to appellee was void, it being beyond the power of the Probate Court to authorize and all rights to the ⅙ interest in question were conveyed to him by the deed from the guardian; that he held the ⅙ interest absolutely free of any purported lease to appellee. Section 5 of Article 4192 which was relied upon as giving the guardian power to make the lease in question to appellee is as follows: "No such lease shall extend beyond the time that the ward shall become twenty-one years of age, unless at that time the lessee shall have discovered such minerals as are specified in the lease, or any of such minerals, upon the premises described in such lease, in which event the same shall remain in full force so long as

such minerals or any of them shall be produced in paying quantities."

The minors here involved have not yet attained the age of 21 years. On the date of the lease in 1947 one was 2 years of age, the other 9. The theory of unitization in 40 acre tracts must be that a well or wells on any part of the tract will produce oil from all parts of the tract so unitized. Where oil is produced from a unitized tract on the part thereof upon which no well has been drilled there is probably production from such unit but not from a well thereon.

Strong reliance is placed by the appellant on the case of Cheesman et al. v. Amerada Petroleum Corp., Tex.Civ.App., 227 S.W.2d 829, as sustaining the claim that in the instant case the lease by the guardian to Amerada was void on account of the pooling agreement contained therein. It is thought a brief discussion of a closely related case will help in the determination of the bearing the case has on the instant case. In the case of Amerada Petroleum Corporation v. Cheesman, Tex.Civ.App., 223 S.W.2d 74 (Wr. Den.), the title to and partition of lots 19 and 20 of Block 2, Cameron's Addition to the town of Bloomington was involved. Amerada claimed the entire mineral interest in lots 19 and 20 by virtue of lease from the guardian of Paul Alois Skarda, a minor. This lease contained a pooling agreement the same or about the same as the pooling agreement in the instant case. It was held Amerada's lease covered only an undivided one-half interest in the lots. D. C. Cheesman had acquired and held by virtue of a lease a one-half undivided interest in the ⅞ working interest of the oil and gas. The action of the trial court was assailed for ordering a partition in kind of the two lots. Amerada was awarded by the trial court all of the ⅞ working interest in lot 20 and Cheesman all of it in lot 19. The judgment of the trial court was affirmed and writ of error denied by the Supreme Court.

The case of Cheesman v. Amerada Petroleum Corp., reported in Tex.Civ.App., 227 S.W.2d 829, 831, as stated arose in the following manner. D. C. Cheesman sought and obtained from the Railroad Commis-

sion a permit to drill on lot 19 under Rule 37 as an exception to the spacing rule to prevent confiscation. It is to be noted that this lot 19 was the lot involved in the case of Amerada v. Cheesman, reported in 223 S.W.2d 74. Amerada filed suit to set this permit aside. A favorable judgment was rendered canceling the permit. This judgment was affirmed by the Court of Civil Appeals, but it was provided therein it was without prejudice to apply for a permit to drill a well on lots 19 and 20. The judgment was affirmed because of the partition of lots 19 and 20 after the spacing rules of the Railroad Commission had been promulgated. Amerada claimed and held an undivided one-half interest in said lots 19 and 20 under and by virtue of an oil and gas lease from the guardian of a minor which purported to give it the privilege of unitizing the area with adjacent lands, and it had purportedly unitized this lease with adjacent lands. In the course of the opinion Chief Justice Archer said: "We do not believe that the pooling clause in the lease from the guardian of Skarda was valid, or, if at all, beyond the time the ward became twenty-one years of age. The minor has now attained his majority.

"Section 5 of Art. 4192, Vernon's Ann. Civ.St. provided: 'No such lease shall extend beyond the time that the ward shall become twenty-one years of age, unless at that time the lessee shall have discovered such minerals as are specified in the lease, or any of such minerals, upon the premises described in such lease, in which event the same shall remain in full force so long as such minerals or any of them shall be produced in paying quantities. * * * '"

The opinion then mentions the Act of the 51st Legislature, Art. 6008b authorizing administrators, executors, guardians or other fiduciaries administering estates, to execute oil and gas leases providing for co-operative development and operation. The said Act, in the emergency clause, recited that there was then no law in force authorizing such fiduciaries to execute mineral leases with such co-operative provisions. In this case the title to Amerada to an undivided half interest in lots 19 and 20 was not involved. It was involved in the Amerada case before mentioned reported in 223 S.W.2d 74 and it was determined as against Cheesman that it had such title, and such title was localized in lot 20. The proposition made by Chief Justice Archer that Amerada had no title was based in part on the provisions of Art. 4192 that no oil lease should extend beyond the time that the ward shall become 21 years of age unless at that time the lessee shall have discovered such minerals as are specified in the lease or any of such minerals upon the premises described in such lease in paying quantities. The minor at the relevant time had attained the age of 21 years. The instant case is to an extent distinguishable from the case before Judge Archer in that neither of the minors involved in this case has attained his majority.

■ The case of Brown v. Smith, 141 Tex. 425, 174 S.W.2d 43, defines the nature of the rights created where owners of separate tracts signed a joint lease with a pooling agreement. It is there in substance held that such a lease is a conveyance by each lessor to each of the other lessors of an undivided interest in the royalties. It must be where a lessee in a lease giving the power to unitize the property of his lessor with the property of the other lessors exercise that power that such exercise of power operates in the same manner; that is, as a conveyance by each lessor to the other lessors in the unit of an undivided interest in the royalties. In line with the case of Brown v. Smith, supra, and cited therein is the case of Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472.

■ Art. 4192, V.A.C.S., was in force at the time of this transaction. The 51st Legislature passed an Act relating to the power of guardians. It is Vernon's Annotated Civil Statutes, Art. 6008b which authorizes fiduciaries such as guardians to execute leases for the co-operative development of oil. Returning again to Art. 4192, it at least by implication authorizes provision for delayed development on the premises leased. This authority it is thought may be implied from the provision "No such lease shall extend beyond the time the ward shall become twenty-one years of age, un-

less at that time the lessee shall have discovered such minerals as are specified in the lease, or any of such minerals, upon the premises described in such lease, in which event the same shall remain in full force so long as such minerals or any of them shall be produced in paying quantities."

If we are correct in the holding that said Article authorized delay rentals it follows that it only authorizes delay rentals until the minor attains majority. Under this Article, as we construe it, a provision in a lease that the production of oil on other property with which the leased property is unitized protects the lease so long as oil is produced on the unit in paying quantities is void after the minor attains his majority. It is void because the authority of a guardian to execute a lease delaying development is limited to the minority of the minor.

There still remains this question—Is it lawful under Art. 4192 to delay development on the ward's property in consideration of the development of oil in paying quantities on a tract of forty acres of which the property of a ward constitutes a constituent part, the consideration being the payment to the ward of a proportionate part of the royalty produced from the entire 40 acre tract? The purpose of an oil lease is the production of oil; the consideration moving to the lessor is the royalty reserved in the lease. The ordinary lease defers development by the paying of delay rentals. In our opinion under Art. 4192 it is not illegal for the contract to provide that the drilling on the ward's premises be deferred if oil is developed by lessee on adjacent premises and the payment of royalties be made to the ward. It is held the guardian's lease in the instant case is a valid lease as to each minor up to the time he attains his majority. By the development made on the unitized area and the tendered royalty the lessee (appellee here) has so far protected its right to develop oil on the premises involved. Even though there be invalid provisions in the lease, same is not entirely void nor is same voidable as a whole.

Finding no error in the case it is ordered that same be in all things affirmed.

## On Motion for Rehearing.

Each party hereto has filed motion herein. The appellant seeks to have us set aside our judgment herein and reverse and remand the cause. The appellee seeks to have us modify our opinion.

Careful and painstaking attention has been given to the respective motions. We adhere to the views expressed in our original opinion and the motion of appellant is hereby overruled.

The deed evidencing the only rights appellant has in and to the property only purports to convey to him subject to the oil and gas lease made by the guardian of the minors. This deed he introduced and relied upon as establishing his rights as to the mineral interest in controversy. It is fair to say, we think, that while it establishes his interest in the property, it likewise limits his interest therein. It is thought elementary that he must recover, if at all, only to the extent he establishes title. He can not recover on the defects, if any, in the title of Amerada.

We adhere to the view that the law was, as stated in our original opinion, at the relevant time regarding the guardian's being without power to delay development beyond the time when the minors have attained their majority or oil and gas had been produced on the premises leased in paying quantities. This was not deemed as an authoritative determination that the lease in question would necessarily terminate when the minors attained their majority. A declaratory judgment was not sought in this respect by either of the parties to the litigation. We deem it beyond our power to render such a judgment and do not think the judgment rendered has that effect.

Further, it is not considered that the disposition of the case forecloses the question of estoppel. As stated, plaintiff's sole claim to an interest in the property is by virtue of his deed from the guardian. This deed is his entire evidence of title. It is thought taking subject to the guardian's lease is tantamount to a ratification and adoption thereof. Even though the guard-

ian might not have the power, as the law then was, to delay development past the time the minors attained their majority, plaintiff did have power to adopt and agree to confirm and ratify such a lease. His action in taking the property subject to this lease amounted to this.

Even though certain contractual provisions be unenforceable as to the grantor, his grantee by assumption thereof may make them his own—may make them enforceable against him although invalid as to his grantor. Waco Bridge Co. v. City of Waco, 85 Tex. 320, 20 S.W. 137; Cleveland State Bank v. Gardner, Tex.Com.App., 286 S.W. 173; Rice-Stix Dry Goods Co. v. First Nat'l Bank of McGregor, Tex.Com. App., 231 S.W. 386; Volunteer State Life Ins. Co. v. Robinson, Tex.Civ.App., 74 S.W. 2d 188 (Wr. ref.); Van Meter v. American Central Life Ins. Co., Tex.Civ.App., 78 S. W.2d 251 (Wr. ref.).

In our opinion the disposition made of the cause is likewise sustainable on the ground of estoppel, even though we be in error in holding the guardian's lease valid.