William R. SUDA, et al., Appellants,

v.

Robert VAUGHAN, Appellee.

No. 5098.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 15, 1955.

Andrew M. Fossler, Houston, Adams & McReynolds, Crockett, for appellants.

Kennedy & Granberry, Crockett, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the district court of Houston County, transferred to this court from the Court of Civil Appeals for the First Supreme Judicial District, at Galveston, by an order of the Supreme Court.

Appellant Suda filed suit against appellee Vaughan in trespass to try title to 94.2 acres of land out of the James Patton Survey in Houston County. Appellee Vaughan, by his First Amended Original Answer and Original Cross-Action, filed plea of general denial and not guilty, also pleaded facts which he alleged placed equitable title in him, subject to the payment by him of certain money to appellant Mrs. D. W. Penner. He also filed a cross-action against both appellants, Suda and Mrs. Penner, alleging facts which he alleged showed that he had equitable title to the land sued for. Mrs. Penner filed a general denial and plea of not guilty to this cross-action. Suda filed no answer to it.

The case was tried to the court without a jury, and judgment was rendered in favor of appellee for title and possession of the land. The judgment further decreed that appellee's judgment was subject to the payment of $220 by him, with interest at the rate of six per cent from February 1, 1954. This sum was ordered paid into the registry of the court for the joint benefit of appellants. The decree recited that such payment into the registry of the court had been made.

The original petition filed by the appellant Suda against the appellee Vaughan contained the customary pleas in trespass to try title and in addition thereto pleaded the statutes of limitation of 3, 5, 10, and 25 years. The appellee's First Amended Original Answer and Cross-Action, in addition to the general denial and plea of not guilty, alleged the following:

That in 1942 appellee was living in Houston, Texas, and his sister, Mrs. D. W. Penner, one of the appellants, was also living in Houston and their mother and father were living in Houston County, Texas; he returned to Houston County to visit his parents and while there he inquired of one Euclid M. Smith about the sale by Smith to him of the land in suit; Smith offered to sell him the land for $550 cash; he returned to Houston, Texas shortly after the Christmas holidays and there notified his sister and brother-in-law, Mr. and Mrs. D. W. Penner, and told them that he could buy the land for $550 and that he would like to do so and move on the land and farm it, but Smith demanded cash and appellee did not have the cash; that Mr. Penner offered to let him have the money to buy the property and said that appellee could pay him back as it was convenient for him; shortly thereafter appellee, with Mr. and Mrs. Penner, went to Crockett in Houston County and appellee again asked Smith about purchasing the land and demanded an abstract of title but Smith declined to provide an abstract but agreed to sell the land for $520 cash without an abstract and appellee accepted such offer and arranged a meeting with Smith the following Monday in a lawyer's office to close the deal; that

he then informed Mr. and Mrs. Penner of what had been done and the following Monday the three of them went to the office of a law firm in Crockett to consummate the transaction; that while waiting in the office Mr. Penner suggested that the deed be made to him instead of having a deed to appellee with notes and that at any time appellee paid the $520 Penner would give him a warranty deed to the land, and appellee agreed to such a plan; that the transaction thus set out resulted in the creation of a trust in D. W. Penner for the use and benefit of the appellee, whereby he acquired equitable title in said land, subject only to payment of the said $520 paid by D. W. Penner for appellee's benefit; that after the above transactions were completed the Penners returned to their home in Houston, Texas and appellee actually moved on the land about February 2, 1943, and has resided thereon continuously since that time as his own property; that in the spring of 1944 appellee arranged to sell the standing pine timber on the land for $300 and after receiving said sum for the timber he paid it to the said Mrs. Penner on the debt of $520, leaving a balance due of $220; that in the fall of 1944, after crops were gathered, he offered to pay Mrs. Penner the balance due on the land, together with interest, but she failed to come to an agreement with appellee on the exact amount then owed, but she did not then nor for many years thereafter revoke or threaten to revoke or repudiate said trust; that a part of the taxes on the land have been paid by appellee and a part by Mrs. Penner and that he actually owes on said land the sum of $220, plus what amount has been paid by Mrs. Penner for taxes; that he has at all times been willing and is now willing to pay such amount due and owed by him as may be determined by the court; that on January 18, 1952 the said Mrs. Penner did not own the land in suit but owned a debt against the appellee and a lien on the land to secure payment thereof, but on January 18, 1952 she delivered to appellant Suda a deed with a vendor's lien reserved, for a recited consideration of $10 cash and a note in the amount of $2,250, bearing interest at 5 per cent per annum

and payable in installments of $250 per year.

In his cross-action he made the appellant Mrs. Penner a party as a cross-defendant with appellant Suda, and pleaded in trespass to try title as to the both of them, and also pleaded the execution and delivery of the warranty deed and vendor's lien described in the above answer; he also pleaded that he had been in possession of the premises as the fee simple owner subject to the payment of the balance of $220 and taxes and tendered by his pleadings all sums he owed in full satisfaction of such claims; he also alleged that the vendor's lien retained by Mrs. Penner and the warranty deed held by Suda constituted clouds upon his title, and having prevailed as a defendant in the original cause he alleged that he was entitled as a cross-plaintiff to have such clouds removed and have his title quieted.

The answer of appellant Mrs. D. W. Penner, which recited that she was a widow, consisted of a general denial and a plea of not guilty.

The appellants bring their appeal under five points of error. By their first point they contend that the evidence is not clear, satisfactory and convincing that a parol trust was created. By their second point they say that there is no consideration for the alleged agreement between appellee Vaughan and D. W. Penner, deceased, and hence the agreement is not enforceable. By their third point they say that the appellee failed to allege or prove that he bound himself to purchase the land from Mr. Penner and that under the statutes of frauds and the Texas Trust Act, an oral express agreement is not enforceable. By their fourth point they contend that appellee failed to allege or prove the tendered purchase price after Mr. Penner's death. By their fifth point they contend that judgment was erroneous because appellee's pleadings and evidence that his alleged agreement with Mr. Penner was that he was to pay Mr. Penner the purchase price of the land when convenient for appellee to do so and such an agreement is within the rule of per-

petuities and therefore void and unenforceable.

The evidence shows that the appellee Robert Vaughan is the brother of Mrs. Penner, one of the appellants, and that she is the widow and heir of D. W. Penner, deceased. Mr. and Mrs. Penner came to Crockett in Houston County from their home in Houston in December of 1942 with Vaughan and visited at the home of their mother, Mrs. Lillie Vaughan, near Crockett. E. M. Smith and his wife conveyed the land to D. W. Penner by a warranty deed dated January 25, 1943. This deed recited a consideration of $520 cash. Appellee Vaughan moved on the land in February, 1943, and has lived there every since. In the spring of 1944 the timber from the land in suit was sold to a Mr. Neeley for $300 cash. Mrs. Penner signed the timber deed. Vaughan testified that the money for the timber was paid in cash to him by Neeley and he in turn paid it to Mrs. Penner and told her it was on what he owed her for the land. He testified that he made the deal for the timber. Mrs. Penner denied this and testified that while Vaughan had talked to the man about the sale she sold the timber to him and he paid the money directly to her. She also testified that nothing was said about it being a payment on the property.

Mrs. Penner did make and deliver a deed to the property to the appellant Suda, which deed recited a consideration of $10 cash and the balance of $2,250 payable in annual installments of $250 each. Suda knew at the time he took the deed that Vaughan was then living on the property and that he had been doing so for sometime.

The evidence to sustain the basic allegation of the appellee as to a parol trust sought to be impressed on the land must be found in the testimony of Mrs. Lillie Vaughan, the mother of Mr. Vaughan and Mrs. Penner. This evidence was given by deposition taken April 24, 1954. After testifying that she knew where the land was, that it was formerly owned by Mr. Euclid Smith, and that Mr. Vaughan had been living there for about 11, 12 or 13 years, she testified as follows in answer to these questions:

"Q. Just about the time that Mr. Smith sold the place did you hear a discussion as to who was buying the place? A. Well, they said Bill was buying the place for Rob, but Bill was paying for it.

"Q. I see. Who did you hear say that he was buying it for Rob? A. I heard him say it.

"Q. Who, Mr. Penner, did he say that? A. Yes.

"Q. For Rob? A. Yes.

"Q. Did you hear any discussion, Mrs. Vaughan, about when Mr. Rob was going to pay Mr. Penner for the place, if he was? A. No, I heard Bill say he believed Rob would pay for it. That they hadn't made no regular payments, that whenever he got the money to pay on it, why he could pay him, but they hadn't set no regular amount or certain date, I don't think, for him to pay it.

"Q. You say you heard Bill say that, by Bill you mean Mr. D. W. Penner, is that right? A. Mr. Penner.

"Q. Did you hear them say anything about why they were staying over until Monday on that particular occasion? A. They said they were buying the place for Rob.

"Q. Was it understood or not to be Rob's place then, but he still owed for it? A. Yes, it was understood it was Rob's place, but he was still owing Penner for it."

This evidence bears out and supports the contention of appellee that the agreement between Vaughan and Mr. Penner was that Penner was buying it for Vaughan, that Vaughan took title at the instant Penner bought the land, subject to the agreement by Vaughan to pay for it. In the phrase "Rob owed for it" can be found by implication evidence that Vaughan agreed to pay Penner for the land.

■ The case was tried to the court without a jury and on all contested issues of fact we must consider the court's judgment as being supported by implied findings and reasonable deductions therefrom in favor of the judgment. We think the trial court was authorized from all of the evidence to find that the property was deeded by Smith to Penner in consequence of the agreement between Penner and Vaughan that the property was to be Vaughan's and that when Vaughan had paid him what he had spent on the property he would give him a deed conveying legal title to it. Under such facts and findings, and on the authority of Brown v. Brown, Tex.Civ.App., 264 S.W.2d 142, the express parol trust was engrafted upon the deed from Smith to Penner and the court's judgment was not erroneous in so deciding.

■ It is true that the evidence in some regard is in conflict, but in order for the evidence as to a parol trust being required to be convincing and satisfactory it is not meant that such evidence is necessarily uncontradicted. A preponderance of the evidence is sufficient if it clearly and definitely attests the facts which gave rise to the trust asserted. Amerada Petroleum Corp. v. Massad, Tex.Civ.App., 239 S.W. 2d 730.

■ The Texas Trust Act, Articles 7425b–1 to 7425b–47, Vernon's Annotated Civil Statutes of Texas, became effective April 19, 1943, and therefore the rights of the appellee Vaughan had become fixed and his interest in the land became vested in him before the effective date of the Act. The deed to the land in question was dated January 25, 1943. The terms of that legislative act therefore do no bar parol evidence of an express trust in this case. Sevine v. Heissner, 148 Tex. 345, 224 S.W.2d 184 by the Supreme Court.

In accordance with the above views, appellants' first, second and third points are overruled.

■ Appellants' fourth point is overruled. The appellee Vaughan testified that he had offered to pay Mrs. Penner the balance due and he also testified that he is still ready and able to pay the balance due and that she refused to accept it. We think this is sufficient tender by the appellee.

■ Under appellants' fifth point in regard to the rule against perpetuities, we find a long and interesting discussion of such rule as applied to contracts. Under the authorities cited by the appellants if the parol trust agreement alleged by the appellee and found by the trial court arose after title was acquired by Penner for Vaughan no parol trust arose. The appellants contend under this point that the evidence shows that if there was such an agreement made, it was at most an agreement on the part of Penner to sell the land in the future to Vaughan. As indicated above, we do not believe that the evidence must be so regarded. The trial court was warranted in making the implied finding that the agreement arose on a Saturday before the deed was executed on Monday, and that on Monday when the deed was executed, prior to the time of its execution, the procedure was adopted by which the deed went directly to Penner instead of to Vaughan. Whatever the agreement was between Vaughan and Penner, the evidence in regard thereto is necessarily not full, because of the inhibitions of Article 3716, Vernon's Annotated Statutes of Texas, commonly referred to as the "dead man's statute." From Mrs. Vaughan's testimony the agreement was that Vaughan was to pay "whenever he got the money to pay on it." Such payment would necessarily have to be made during Vaughan's lifetime and the agreement then was not within the rule against the perpetuities. Also it is noted that according to the court's implied findings, $300 of the debt had been paid and the appellee has paid into the registry of the court the balance of the payment. We think this point shows no error and it is overruled.

The judgment of the trial court is affirmed.